524 So.2d 915 (1988)
Marvin GORMAN and Marvin Gorman Ministries, Inc.
v.
Jimmy SWAGGART, Jimmy Swaggart Ministries, Inc., William D. Treeby, The First Assembly of God Church of New Orleans, Louisiana, Inc., Louisiana District Council of the Assemblies of God, Inc., the General Council of the Assemblies of God, Lakeview Christian Center, Canal St. Assembly of God, Inc., Michael Indest, Tom Miller, Cecil Janway, Waldo Risner, Allan McDonnel and Don Brankel.
No. CA-8757.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1988.
Rehearings Denied May 11, 1988.
*916 Hunter W. Lundy, Lundy & Dwight, Lake Charles, for plaintiffs-appellants.
Thomas Dee Frasier, Frasier & Frasier, Tulsa, Okl., Duplass, Witman & Zwain, Gary M. Zwain, New Orleans, for appellee Allan McDonnel.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, Vivian L. Madison, Lawrence A. Mann, Leake & Anderson, New Orleans, for appellees.
Phillip A. Wittmann, Wayne J. Lee, Denise M. Pilie, Stone, Pigman, Walther, Wittmann & Hutchinson, James C. Murphy, Jr., Patricia A. McKay, Cornelius, Sarrin & Murphy, Peter A. Feringa, Jr., John F. Olinde, Chaffe, McCall, Phillips, Toler & Sarpy, Wood Brown, III, Robert Durgin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendants-appellees.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
BYRNES, Judge.
This is an appeal from district court judgments maintaining declinatory exceptions of lack of subject matter jurisdiction and peremptory exceptions of no cause and no right of action in a suit brought by Marvin Gorman and Marvin Gorman Ministries, Inc. to recover damages for defamation, libel, invasion of privacy, and intentional infliction of emotional distress from Jimmy *917 Swaggart and thirteen other defendants. We reverse.
The suit arose out of the actions and events leading up to and following the dismissal and/or resignation of Marvin Gorman from his position as a minister of the Assemblies of God, a fundamentalist Christian religious body. Gorman was pastor of the First Assembly of God Church in New Orleans and a member of this hierarchical denomination's national governing body. He was also the president and founder of Marvin Gorman Ministries, Inc., (MGM), a non-profit religious corporation which made extensive use of television as a means of raising money and carrying its message to the public.
The petition alleges that Gorman's separation from the Assemblies of God came about as the result of a July 15, 1986 confrontation between Gorman and defendant Jimmy Swaggart, another Assemblies of God minister. Other defendants present at this meeting were Michael Indest, pastor of Lakeview Christian Center, a New Orleans area Assemblies of God church, and a member of his congregation, William Treeby, an attorney who was a member of the board of directors of Jimmy Swaggart Ministries, Inc., and had represented Swaggart in the past. During the course of the July 15 meeting, Swaggart allegedly accused Gorman of committing immoral acts with several women over a period of years. Gorman admitted one instance of immoral conduct which had occurred several years earlier, but denied the remainder of Swaggart's accusations and refused to comply with Swaggart's demand that he make a full confession and seek rehabilitation within the Assemblies of God.
The next day, July 16, 1986, Gorman decided to resign both as a minister and as a member of the Assemblies of God. His resignation was apparently accepted by the board of directors of his church and his decision was announced to his congregation that same evening. However, Swaggart and several of the other defendants did not consider Gorman's resignation valid under the constitution and by-laws of the Assemblies of God and prepared a statement outlining in full their accusations against Gorman. They caused this statement to be read to Gorman's congregation on July 20, 1986, four days after his purported resignation.
In the meantime, the Louisiana District Council of the Assemblies of God instituted disciplinary action against Gorman, notwithstanding his resignation from their church. Gorman did not participate in this proceeding which culminated in an August 4, 1986 decision to recommend his dismissal as an Assemblies of God minister. The District Council's recommendation was accepted by the General Council on August 14, 1986, and Gorman was formally dismissed.
Apparently Gorman's resignation and the decision of the General Council to dismiss him did not close the matter as far as Swaggart and his group were concerned. On August 20, 1986, Swaggart wrote to Cecil Janway, Superintendent for the Louisiana District Council of the Assemblies of God stating that he (Swaggart) had heard rumors that Janway believed (or was considering believing) Gorman's denial of Swaggart's accusations. Swaggart's letter went on to state that Gorman's version of his conduct was not true and that Swaggart wanted Gorman's case handled in the same way as any other minister's. Swaggart also said that he would take whatever steps were necessary to prevent a "cover-up". Since the Louisiana District Council had already reviewed the case, recommended dismissal, and had its recommendation accepted by the General Council, the purpose behind this letter is not clear. Discipline had already been pronounced and enforced on Gorman when Swaggart wrote the letter. Gorman had voluntarily left both the Assemblies of God church and its ministry more than a month earlier. Moreover, Swaggart's accusations had already been made known to both the Louisiana District Council and General Council when those bodies were considering whether to dismiss Gorman. Be that as it may, on September 2, 1986, Janway read yet another statement to the congregation of Gorman's former church which claimed among other things that:

*918 Established evidence and fact prove that Marvin E. Gorman engaged in multiple immoral incidents over a period of years which included adultery, illicit affairs, and unscriptural lascivious conduct with women who came to him for counseling. This occurred for many years, extending up to and including this year. I have a statement from a woman telling of his conduct with her this year which was unbecoming to a minister.
The statement also criticized Gorman for presuming to tell his version of the incidents and asserted that:
The manner in which members and supporters of First Assembly have been contacted directly and indirectly by Marvin E. Gorman demonstrates a blatant disregard for ministerial ethics. Such conflict and the misleading message being given shows an absence of christian love. There has been a disregard for unity and harmony in the body of Christ and the local Assembly. The responsibility for confusion, discord, and strife coming from some media messages and the personal contacts lies at the feet of Marvin E. Gorman and individuals coming to his defense, presumably out of ignorance of the true facts. We find this tragically unscriptural, misleading and detrimental to the spiritual well being of all believers.
Finally the September 2, 1986 letter stated that:
A local television broadcast, last week, by Marvin E. Gorman, gave some the impression that myself and other district officials, as well as some national officials, of the Assemblies of God, had somehow endorsed or approved of his continued ministry. Any such implication is erroneous, unfounded, and without permission. There are national ministries recognized and endorsed by the Louisiana District Council and the General Council of the Assemblies of God. Marvin Gorman Ministries is not one of them now, and in fact has never been one of them.
The petition alleges that this letter was written by Swaggart, Treeby and others, and that its circulation and content were approved by the Louisiana District Council and General Council of the Assemblies of God. More importantly, it is alleged that distribution of this statement was not confined to members of the Assemblies of God churches, but included pastors of churches of other denominations, the general public (both in Louisiana and throughout the United States), and foreign missionaries. The petition goes on to allege other acts and statements, which Gorman and MGM claim were made maliciously and with knowledge of their falsity, by various defendants to members of the media and private citizens. Gorman and MGM further claim that Swaggart and others caused MGM to lose television time by casting doubt on the financial, professional, and moral character of Gorman and his ministry. It is also alleged that the false stories concerning Gorman's conduct were embroidered and repeated to individuals and financial institutions, causing them to withdraw from commitments to finance various aspects of MGM's operations. Finally, it is alleged that Swaggart and others repeated the statements outlined above, as well as others accusing Gorman of embezzling church funds and being connected with the Mafia, to representatives of the news media in order to further publicize their content and to damage both Gorman and MGM.
The petition was met with a number of exceptions including no cause of action, no right of action, and lack of subject-matter jurisdiction. As to Gorman individually, the exceptions of no cause and no right of action were either denied or dismissed as moot. These judgments were not appealed and need not concern us at this time. The exception of lack of subject-matter jurisdiction was maintained. This judgment forms the basis of Gorman's appeal.
As to MGM, the exceptions of no cause and no right of action were maintained and MGM's claims against all defendants dismissed. The exceptions were based in part on the argument that a corporation cannot be defamed, libeled or caused emotional distress and that, to the extent the petition *919 sought such damages, it failed to state a cause or right of action.
We begin by observing that this argument is not appropriately raised by the exception of no right of action. This exception is intended to question the plaintiff's right to bring the suit by challenging his legal interest in its subject matter. It raises the question of whether a remedy afforded by law can be invoked by a particular plaintiff. Henry v. State through Department of Health & Human Resources, 435 So.2d 565 (La.App. 3d Cir.1983), writ denied 441 So.2d 750 (La.1983). It does not raise the issue of whether the remedy exists, only who may assert it. A challenge to the existence of a particular remedy is more properly raised by the exception of no cause of action. That exception questions whether the law grants a remedy to anyone for the particular harm alleged in the petition, just as the exception of no right of action questions whether a particular plaintiff is a member of the class to whom the remedy is extended. Mercier v. Flugence, 408 So.2d 52 (La.App. 3d Cir. 1981); Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir. 1979).
In the present case, there is no doubt that if anyone had the right to bring an action for the damages MGM claimed in the petition, it was the corporation itself. It was therefore error to maintain the exceptions of no right of action as to MGM, and the judgments which have done so are reversed.
The real issue as it relates to MGM is whether the law provides a remedy under the facts alleged in the petitionin other words, does Louisiana law provide corporations with a cause of action for defamation, libel, etc. and if so, does the petition of this corporation allege sufficient facts to state such a cause? In our opinion, it does.
There were two main arguments presented in support of the exception of no cause of action. First, it was claimed that a corporation has no reputation in the personal sense and so cannot be defamed by non-business related statements. Second, it was argued that MGM could not bring suit based on allegedly defamatory statements made about Gorman but not about MGM. In our opinion, these arguments misconstrue the law and ignore the reality of this particular situation.
This case is not like that of a business corporation seeking damages for statements made about the personal morality of one of its officers or a member of its board of directors in matters unrelated to business. Gorman's personal reputation was one of MGM's primary assets. By questioning his moral integrity, the integrity of the corporation itself was called into question. In many ways, defamation of Gorman was defamation of his ministry. He was its principal spokesman. It was with him that the public identified. His reputation for spiritual and moral integrity was the cornerstone on which the ministry was built. Attacks on Gorman, which included allegations that he embezzled MGM funds, could (and allegedly did) decrease contributions to MGM and lessen the confidence of lenders in the stability and integrity of the ministry. Under these circumstances, we believe it was possible for MGM to be defamed by statements about Gorman even if MGM was not mentioned by name in those statements. For a discussion of this type of defamation see generally, W. Prosser, Handbook of the Law of Torts, Sec. Ill, p.745 (4th ed. 1971) and Restatement of Torts 2d, Sec. 564, comment (e).
In our opinion, the reputation of Gorman's ministry was inextricably tied to his personal reputation. The unusual nature of this relationship distinguishes this case from Coulon v. Gaylord Broadcasting, 433 So.2d 429 (La.App. 4th Cir.1983), in which this court reaffirmed the general rule that an action for defamation is personal to the one defamed and cannot be asserted by one only indirectly affected. We therefore reject the argument that MGM cannot bring suit based on the defamatory statements purportedly made about Gorman.
We likewise reject the argument that a non-profit corporation like MGM cannot bring an action for defamation. In Sec. *920 561(b) of the Restatement of Torts 2d, the American Law Institute endorses the position that a non-profit corporation which depends on the public for financial support can bring such an action if there is publication of defamatory matters which interfere with the corporation's activities or tend to prejudice it in the public's eye. The comments to this section expressly address the applicability of this rule to religious and charitable organizations. We have found no Louisiana case directly on point. However, a number of cases have held without discussion that corporations which operate for profit have a cause of action for defamation. See Economy Carpets Manufacturers & Distributors, Inc. v. Better Business Bureau of Baton Rouge, 361 So.2d 234 (La.App. 1st Cir.1978); WHC, Inc. v. Tri-State Road Boring, Inc., 468 So.2d 764 (La.App. 1st Cir.1985). We see no reason to treat non-profit corporations differently. The position adopted by the Restatement is both reasonable and fair and we therefore adopt it as our own. See also Prosser, supra at 745.
However, as to MGM's claim for intentional infliction of emotional distress and invasion of privacy, another rule controls. MGM has conceded that it cannot recover damages for intentional infliction of emotional distress, so we need not address this issue. As to the invasion of privacy question, the defendants successfully argued in the district court that MGM could not assert this cause of action because a corporation has no right of privacy except as to misappropriation of trade names and other matters not connected with the facts of this case. We agree.
The tort of invasion of privacy appears to be directed at redressing the damage which an individual suffers when legally recognized elements of his right of privacy have been violated. The basis for recovery is the emotional injury which such violations cause. See generally Prosser, supra, Sec. 117, Restatement of Torts 2d, Sec. (1977). Being a fictional person, a corporation has no emotions to injure, and for this reason has traditionally been precluded from recovering damages based on invasion of privacy. We have been cited to no case allowing a corporation to recover on this basis and have found none in the course of our research. Moreover, MGM presents no serious or compelling argument in favor of changing this long standing rule, but directs its efforts primarily at the defamation claim. Were this the only basis on which Gorman and MGM sought to recover, we would affirm the granting of the exception of no cause of action, finding as a matter of law that a corporation may not recover damages for such injury. However, that was not the case. Recovery was sought on a number of grounds, including defamation. It is therefore necessary for us to consider the petition as a whole to determine if it was sufficient to withstand an exception of no cause of action.
We begin by noting that for the purpose of deciding an exception of no cause of action the factual allegations of the petition are accepted as true. Moreover, any doubt as to the sufficiency of those allegations must be resolved in favor of the plaintiff. The exception can be maintained only when the facts alleged in the petition disclose no cause of action on any ground raised in the petition. Faciane v. Southern Shipbuilding Corp., 446 So.2d 770 (La.App. 4th Cir.1984). The reason for this rule is that the exception of no cause of action is intended to test the legal sufficiency of the petition itself, not the evidence which may or may not be available at trial to prove what it alleges. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975).
To state a cause of action for defamation the following must be alleged: defamatory words; publication; falsity; malice (actual or implied); and injury. Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196 (La. 1980); Wiggins v. Creary, 475 So.2d 780 (La.App. 1st Cir. 1985), writ denied 478 So.2d 910 (La.1985); O'Dell v. Deich, 496 So.2d 1074 (La.App. 4th Cir.1986).
Defamatory words are those which tend to expose a person to contempt, hatred or ridicule, or otherwise deprive that person of public confidence or injure him in his occupation or reputation. Bradford v. *921 Murray, 467 So.2d 1297 (La.App. 4th Cir. 1985), writ denied 469 So.2d 988 (La.1985); Freeman v. Cooper, 414 So.2d 355 (La. 1982). Restatement of Torts 2d, Sec. 559 (1977). Statements imputing a crime to another are defamatory, Cangelosi v. Schwegmann, supra, as are statements imputing adultery or extramarital sexual relations. Moreau v. Brenan, 466 So.2d 572 (La.App. 5th Cir.1985); Goldsmith v. Unity Industrial Life Insurance and Sick Ben. Ass'n, 128 So. 182 (La.App. Orleans 1930).
The publication element of a cause of action for defamation is met by alleging that the defamatory statement was made to someone other than the person defamed, even if it is only to a single person. Toomer v. Breaux, 146 So.2d 723 (La.App. 3d Cir.1962). Restatement of Torts 2d, Sec. 577 (1977).
In this case it was alleged that Swaggart and the other defendants made a variety of statements, both oral and written, which falsely and maliciously accused Gorman of repeated acts of adultery and immoral conduct. The petition goes on to allege that the defendants falsely and maliciously accused Gorman of embezzling funds from his church and of having connections with the Mafia. It is also alleged (albeit in a vague and somewhat indirect manner) that the defendants impugned the credit and business practices of MGM to lenders and television stations. It is further alleged that these statements were made and publicized to a wide range of people both inside and outside the Assemblies of God.
Construing these allegations liberally in favor of MGM, we find that they are adequate to state a cause of action for defamation against all defendants. Having reached this conclusion it is unnecessary to address the adequacy of the factual allegations relating to other causes of action in the petition. As long as a cause of action is stated as to any of the demands made in the petition, the entire petition must stand and the exception of no cause of action must be overruled. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Haskins v. Clary, 346 So.2d 193 (La.1977); Elliott v. Dupuy, 135 So.2d 54 (La.1961). The trial court erred by holding otherwise and the judgments maintaining the exceptions of no cause of action as to MGM are hereby reversed.
Some of the defendants argue that because they did not make the statements complained of they are not subject to liability and were properly dismissed. We disagree. The petition, as amended, alleges a conspiracy among all the defendants to defame and injure Gorman and MGM. While these allegations may be difficult to prove at trial, we are not concerned at this stage with proofonly with allegations.
Under C.C. Art. 2324(A):
He who conspires with another person to commit an intentional or willful act is answerable in solido with that person for the damage caused by such act.
Having alleged a conspiracy among all defendants, Gorman and MGM are entitled to an opportunity to prove that allegation at a trial on the merits. See, Economy Carpets Manufacturers & Distributors Inc. v. Better Business Bureau of Baton Rouge, 333 So.2d 765 (La.App. 1st Cir. 1976), writ denied 334 So.2d 428 (La. 1976); Ardoyno v. Ungar, 352 So.2d 320 (La.App. 4th Cir. 1977), writ denied 354 So.2d 210 (La.1978).
We now turn to the difficult questions raised by the granting of the exception of lack of subject-matter jurisdiction. The trial court granted the exceptions based on its belief that the clause in the First Amendment of the United States Constitution which guarantees the free exercise of religion (and the jurisprudence interpreting that guarantee) precluded the exercise of civil jurisdiction over any of the matters raised in the petition. We disagree.
The First Amendment of the United States Constitution and Article 1, Sec. 4 of the Louisiana Constitution both guarantee religious freedom and have been interpreted to forbid courts from interfering in the ecclesiastical matters of religious groups. The Serbian Eastern Orthodox Diocese for the U.S. and Canada v. Milivojevich, *922 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980). This prohibition extends to matters of religious discipline, faith, or custom, as well as to the appointment and removal of ministers. Milivojevich, supra; Joiner v. Weeks, 383 So.2d 101 (La.App. 3d Cir.1980). However, there are limits to this prohibition, and in those cases where religious doctrine is not involved, or may be deferred to, civil courts retain the power to resolve disputes. LeBlanc v. Davis, 432 So.2d 239 (La.1983); Bourgeois v. Landrum, 396 So.2d 1275 (La.1981); Thomas v. Craig, 424 So.2d 1090 (La.App. 1st Cir.1982); Rose Hill Baptist Church v. Jones, 425 So.2d 348 (La.App. 3d Cir.1982); Wilkerson v. Battiste, supra.
In our opinion, this is such a case. In spite of defendants' arguments to the contrary, Gorman clearly is not disputing his dismissal as a minister. How could he when his voluntary resignation predated his formal dismissal? This fact alone distinguishes this case from many of those cited by defendants and lessens the impact of their holdings. More important, however, is the fact that Gorman's suit alleges defamatory acts which occurred outside the Assemblies of God after he had resigned as a member of that denomination and been formally dismissed as one of its ministers.
We have been presented with no plausible argument to justify these allegedly defamatory actions as part of internal church discipline. Moreover, even were we to find that the defendants' post-dismissal statements were legitimately part of internal church discipline, there is a serious question as to whether the First Amendment's protection would extend to those statements allegedly made to the press, the general public and pastors of other denominations. In our opinion, these allegations take the case beyond the scope of an internal religious matter. This court may be powerless to interpret the religious doctrine which defendants claim compelled them to publicize their accusations to other members of their church, however, this does not mean they can make those accusations outside their church and not face the legal consequences.
Neither the United States or the Louisiana Constitution provides religious organizations or their members with unqualified blanket immunity from the civil consequences of potentially defamatory statements. To the extent that the Assemblies of God interprets scripture and its own internal rules to require disclosure of Swaggart's accusations against Gorman to its members as part of the disciplinary process, civil courts may be precluded from interfering, even if the accusations appear to be false or defamatory. However, by taking their accusations outside their church, the defendants have also taken themselves outside the scope of the First Amendment's protection and, to that extent, have exposed themselves to the jurisdiction of the civil courts.
In an attempt to avoid this consequence the defendants contend that their church includes all Christians. This argument must be rejected. To begin with, it would allow the Assemblies of God to treat Christians who do not subscribe to their particular brand of Christianity as if they were members of the Assemblies of God, possibly violating the First Amendment rights of these non-Assemblies of God Christians. Moreover, as this case so vividly illustrates, there is a very real danger that this "universal church" argument would lead to claims that any religious decision by the Assemblies of God could be extended to any Christian. In addition, this argument ignores the fact that defendants' accusations concerning Gorman and MGM were allegedly repeated to non-Christians, atheists and agnostics. Even the most liberal attitude toward freedom of religion cannot cloak the dissemination of defendants' accusations to these groups in the mantle of the First Amendment.
Given the allegations of broad publication of defamatory statements beyond the confines of the Assemblies of God, we find that the civil courts of Louisiana have subject matter jurisdiction over this suit and the trial court's ruling to the contrary is *923 reversed. The parameters of the relief which can be granted in the event that Gorman and MGM are successful are obviously fixed by the constitution and the law on qualified privileges. However, the task of defining these limits must be left to the district court and will depend in large part on the facts developed at trial.
For the foregoing reasons, the judgments maintaining the exceptions of no cause and no right of action as to MGM and the exception of lack of subject matter jurisdiction as to Gorman are reversed and the case remanded to the district court for further proceedings consistent with this opinion and the law. The exception of no right of action, filed the day of oral argument by defendant Michael Indest, has been rendered moot by the substitution of the bankruptcy trustee as plaintiff in place of MGM & Gorman.
REVERSED AND REMANDED.