554 So.2d 90 (1989)
Rudolph G. BABCOCK
v.
NEW ORLEANS BAPTIST THEOLOGICAL SEMINARY.
Nos. 89-CA-0233, 89-CA-1248.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
Rehearing Denied January 17, 1990.
Writ Denied March 30, 1990.
A. Morgan Brian, Jr., New Orleans, and James P. Guenther, Guenther & Jordan, Nashville, Tenn., and Richard T. Simmons, New Orleans, for New Orleans Baptist Theological Seminary.
Ellis B. Murov, Joanne C. Ferriot, Deutsch, Kerrigan & Stiles, New Orleans, for Rudolph G. Babcock.
Before CIACCIO, WARD and ARMSTRONG, JJ.
WARD, Judge.
New Orleans Baptist Theological Seminary instituted two separate appeals from district court judgments in a suit brought against the Seminary by Rudolph Babcock, a former student at the Seminary. We have consolidated these appeals for review.
In 89-CA-0233, the Seminary appeals a District Court judgment overruling its declinatory exception of lack of subject-matter jurisdiction. Babcock, then a student at the Seminary, sued for injunctive relief to prevent the Seminary from dismissing him. Babcock's suit is based on a contract alleged to exist between him and the Seminary by virtue of the terms of the student handbook. The Seminary excepted to the District Court's subject-matter jurisdiction based on the separation of church and state principle found in the First Amendment to the United States Constitution and comparable provisions in the Louisiana Constitution. At issue therefore is whether secular civil courts may inquire into a particular type of dispute between an institution whose primary objective is to train students for ministry and one of its students.
*91 In 89-CA-1248, the Seminary appeals another judgment in which the District Court again denied the Seminary's exception of subject-matter jurisdiction which again was based on the principle of separation of church and state, and granted Babcock a preliminary injunction which would require the Seminary to graduate and confer a Master of Divinity degree upon him. This Court exercised its supervisory jurisdiction, staying execution of the District Court's preliminary injunction until resolution of the subject-matter jurisdiction issue. Nonetheless, this Court ordered the Seminary to allow Babcock to participate in graduation activities. The Seminary appeals the District Court judgment, stayed by this Court, granting Babcock the preliminary injunction which requires the Seminary to confer a degree.
The New Orleans Baptist Theological Seminary is a corporation established, owned and operated by the Southern Baptist Convention to provide quality education in theology, religious education, and church music for graduate and undergraduate students. The Southern Baptist Convention provides most of the financial support for the Seminary, and Seminary students are not charged tuition, but they must pay a matriculation fee, housing costs, and other expenses each semester. The Seminary is accredited by the Southern Association of Colleges and Schools (S.A.C.S.).
To be eligible for admission to the Seminary, applicants must have been a Christian for at least one year and provide both a "church statement" in which his church recommends and approves him as one worthy to pursue training at the Seminary and a "statement of conversion and call" in which the applicant may discuss his conversion to Christianity and/or his sense of divine call to minister as a Christian.
In August 1985 Babcock entered the Seminary to pursue a Master of Divinity degree in marriage and family counseling. After enrolling, and before completing his studies, Babcock was licensed as a minister by a Baptist church in Wisconsin which is not a member of the Southern Baptist Convention. Also, after enrollment Babcock and his wife experienced marital difficulties, and in July 1987, campus police were required to intervene in a violent marital dispute between the two.
On August 4, 1987, Babcock received a letter from Dr. Don Stewart, executive vice-president of the Seminary, stating, among other things, that the Student Affairs Committee met on July 31, 1987 and accused Babcock of separating from his wife and considering a divorce. By this letter, Babcock was informed he could not continue in his degree program and was instructed to leave the campus. This letter indicates that the Seminary sought to dismiss Babcock because of his alleged violation of its divorce policy which is set forth in the student handbook:
DIVORCE POLICY
Students having marital difficulties during seminary days are encouraged to seek help through the free service provided by the seminary counseling center. Should separation and/or divorce occur, the student is required to withdraw from his/her degree program. Application for re-entrance may be made after reconciliation is accomplished or twelve months after the effective date of the divorce.
According to Dr. Stewart, the committee's action was final and, pursuant to "long-enforced" school policy, the possibility of Babcock's returning to the Seminary was virtually non-existent because his dismissal followed probation.
In his petition, Babcock asserted that he and his wife, Suzanne, had never separated nor divorced, that he was never on probation, and that, in dismissing him, the Seminary failed to follow its own established procedures set forth in the student handbook as "Due Process for Handling Conduct Situation":
The seminary attempts to protect the rights and privileges of its students through due process in all disciplinary matters, but reserves the right to take disciplinary action against any student whose conduct is illegal or immoral or whose attendance at the seminary is against the best interests of the student or the seminary.

*92 The due process established for handling conduct situations is not a duplication of legal criminal proceedings which are inappropriate to a seminary setting which has as its basic goals the education of the individual.
The following procedure is utilized in the handling of conduct situations.
1. HEARINGS
a. The student has an initial hearing with the Executive Vice President. At this initial hearing, the student is informed of all the details of the process. If conditions warrant, a written, signed complaint is given to the student for him to study.
b. In the event that a written, signed complaint is made, a second interview is held with the Executive Vice President, at which time the student may be accompanied by counsel from within the seminary community (faculty, staff, or student). The violation is discussed, and the student is given the opportunity to submit a written statement giving his explanation of the situation.
c. At the conclusion of the second interview, it is determined whether or not the circumstances of the case warrant the sending of the case to the Student Affairs Committee. The Committee will be the tribunal which judges such cases, with the exclusion of the Executive Vice President and any other committee member(s) who may be involved in the investigation of or presentation of the complaint under consideration. Regardless of the outcome of the second interview, a brief continuity report of all known information pertaining to the case will be drawn up by the administrator handling the case. If the case does not warrant further action the continuity report will clearly state that no disciplinary action was taken. The student has the right to read the continuity report in its entirety.
d. If the circumstances in the case warrant sending it to the Student Affairs Committee, the chairman of the committee shall set a time and place for the hearing. The chairman shall notify the student(s) involved of the time and place at least 24 hours prior to the hearing. The student has the right to have present in the hearing those representatives and witnesses whom he desires. The hearing will be closed to the public and all information discussed or revealed will be held in strict confidence.
The Student Affairs Committee shall have access to the administrator's continuity report as well as the signed statement of the student. The student shall be given the opportunity to present evidence in his behalf during the hearing.
e. At the conclusion of the hearing, the Student Affairs Committee shall, in private, make a determination as to the disciplinary action to be taken. At any time during their deliberation, the committee may recall the student, the administrator, or any other person(s) they deem necessary in order to make their decision.
f. Upon reaching a decision, the committee chairman and the Executive Vice President shall meet with the student to inform him of the action to be taken and to discuss the provisions of the action.
2. APPEAL
a. The student may appeal the action of the Student Affairs Committee if he feels:
(1) he has received unjust treatment.
(2) all the facts in the situation were not considered.
(3) the action taken was too severe for the behavior involved.
b. Appeal must be made in writing to the President of the seminary within 48 hours of the action taken by the Student Affairs Committee.
c. Upon completion of his investigation, the President will either uphold the action previously taken or write a report making specific recommendations for consideration by the Student Affairs Committee.
The Seminary acknowledges that this due process statement was placed in the handbook because of S.A.C.S. accreditation requirements.
On August 19, 1987, after alleging he was not afforded this due process procedure, *93 Babcock obtained from the lower court a temporary restraining order enjoining the Seminary from interfering with his right to register for fall semester classes. The TRO was successively renewed by the District Court every ten days. In the meantime, the Seminary filed its declinatory exception to the petition. After an evidentiary hearing only on the exception, the District Court denied the exception and held that the controversy was within its jurisdiction as a civil and secular matter because the issue in the case was controlled by contract principles rather than the First Amendment principle of separation of church and state.
Rather than go to trial on the merits of Babcock's application for preliminary and permanent injunction and his demand for specific performance of his contract rights as a student, the Seminary agreed by consent judgment of May 31, 1988 to the entry of a permanent injunction granting Babcock the relief he requested, i.e. to prohibit the Seminary from dismissing him based upon his conduct or activities on or before August 19, 1987, subject to the Seminary's right to appeal the First Amendment issue of subject-matter jurisdiction. In 89-CA-0233 the Seminary appeals only that portion of the District Court's judgment which overruled its exception to the Court's subject-matter jurisdiction.
In the meantime, during the two years in which Babcock's suit and the Seminary's appeal in 89-CA-0233 were pending in the District Court and this Court, and the injunction prohibiting the Seminary from dismissing Babcock remained in effect, Babcock satisfactorily completed the coursework required to obtain a Master of Divinity degree. He therefore anticipated that he would graduate and obtain the degree at commencement exercises scheduled for May 20, 1989. On May 9, 1989, however, the Seminary notified Babcock that he would not graduate nor obtain his degree at the May graduation. The decision, it was later revealed, was based on the faculty's enforcement of a provision of the school's Bulletin. The Bulletin is a comprehensive publication describing, in detail, courses offered at the Seminary, various aspects of academic, student and religious life there, and other general information. The pertinant provision states:
REQUIREMENTS FOR GRADUATION
In order to graduate from the seminary a student must meet all academic requirements set forth in the Bulletin, settle all financial obligations to the seminary, and maintain high standards of moral and ethical conduct. If, in the opinion of the appropriate faculty committee any student proves unfit for spiritual, moral, mental, or other reasons either to continue his studies or to receive a degree, the seminary reserves the right to dismiss him at any time and/or to withhold a degree he otherwise has earned. The decision of the committee may be appealed to the President.
The Seminary claims that although pursuant to the consent judgment of May 31, 1988, it was prohibited from dismissing Babcock for his alleged violation of the school's separation/divorce policy, its "agreement" to continue to allow Babcock to matriculate at the school did not require it to graduate him or to award a degree to him when the faculty committee deems him unfit for spiritual, moral or any other reason.
For the following reasons, in 89-CA-0233, we affirm the District Court's judgment on the jurisdictional issue. And because the Seminary has declined to contest the merits of Babcock's petition, the judgment issuing a permanent injunction restraining the Seminary from dismissing Babcock is also affirmed. In 89-CA-1248 we vacate the stay issued by this Court and, deciding the case on the merits in the injunction issue, we affirm the District Court's grant of the injunction which requires the Seminary to award a degree to Babcock.

JURISDICTIONAL APPEAL (89-CA-0233)
The First Amendment of the United States Constitution and Article 1, Section 8 of the Louisiana Constitution both guarantee religious freedom and have been interpreted *94 to forbid courts from interfering in the ecclesiastical matters of religious groups. Gorman v. Swaggart, 524 So.2d 915, 921 (La.App. 4th Cir.1988) citing Serbian Eastern Orthodox Diocese, etc. v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) and Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980). Although this prohibition covers matters of religious discipline, faith, rule or custom and the appointment or removal of ministers, it does not apply to instances where religious doctrine is not involved. Gorman, 524 So.2d at 922.
In search of First Amendment religious protection, the Seminary argues that it is a "church" rather than a "school." The Seminary vigorously argues its status as a Church was correctly decided in E.E.O.C. v. Southwestern Baptist Theological Seminary, 651 F.2d 277 (5th Cir.1981), when that Court held that the Southwestern Baptist Theological Seminary, a sister seminary to the New Orleans Baptist Seminary, was entitled to the status of a "church" because it "is principally supported and wholly controlled by the Convention for the avowed purpose of training ministers to serve the Baptist denomination." 651 F.2d at 283.
In the E.E.O.C. case, a Texas Seminary challenged an administrative subpoena for production of employment related records. Citing McClure v. Salvation Army, 460 F.2d 553 (5th Cir.1972), the Court determined that First Amendment religious freedom and establishment principles did not require disclosure in response to the subpoena of the employment relationship between a church (the Seminary) and its ministers. In determining which of the Seminary's employees were "ministers" whose employment data need not be disclosed, the Court held that faculty members and some of the upper administrative personnel were ministers, while support staff and other administrative personnel, some of whom were students and some of whom were ordained Baptist ministers, were not. Thus, the Seminary was required to provide the subpeonaed information for the latter group of employees.
In E.E.O.C. the Court was not called upon to determine whether the Texas seminary was a church or a school. Had that been the issue, the Court may well have characterized the seminary differently. And, at any rate, the Seminary in the instant case has presented no persuasive arguments nor authority as to why an institution may not be considered as both a church and a school.
Moreover, we do not regard the characterization as determinative of the dispute at issue. Even if we consider the Seminary as a church, First Amendment principles are applicable only if the controversy between the Seminary and Babcock interferes with the relationship between a church and one of its ministers or if the dispute involves a matter purely of ecclesiastical concern.
The dispute between the Seminary and Babcock is not one in which Babcock is cast in the role of a minister of the Seminary. Babcock already is licensed to minister by a Baptist church not affiliated with the Convention. His license to minister is not dependent upon his role as a student at the Seminary. The licensing/ordination function is reserved exclusively to the local Baptist churches. The Seminary has no authority to grant or withdraw ministerial licenses nor to ordain or expel one as a minister. Hence, Babcock is not a "minister" of the Seminary in the sense that some Seminary employees were held to be ministers in E.E.O.C., and the dispute between Babcock and the Seminary is not properly characterized as one between a church and one of its ministers. We conclude Babcock's status in relation to the Seminary is that of a student. Therefore, all of the jurisprudence referred to by the Seminary which established the lack of civil court jurisdiction over the expulsion of a minister from the ministry by a religious organization, is inapplicable.
Nor is the dispute between the Seminary and Babcock purely a theological or ecclesiastical matter. Babcock's petition does not require interpretation or evaluation of ecclesiastical doctrine or practice, and resolution *95 of the dispute likewise requires no reference to religious doctrine and practice.
In LeBlanc v. Davis, 432 So.2d 239 (La. 1983), the Supreme Court held that the determination of 1) whether the proper procedure for dismissal of a pastor, according to the founding resolutions of a local church, was followed, 2) whether the pastor was properly dismissed from his pastoral duties and 3) whether the pastor's refusal to relinquish his pastoral duties warranted injunctive relief, were all matters subject to secular, civil jurisdiction and not matters that concerned interpretation or evaluation of ecclesiastical doctrine or practice that are solely within the province of the Church. See also, Rose Hill Baptist Church v. Jones, 425 So.2d 348 (La.App. 3d Cir.1982). Similarly, in Bourgeois v. Landrum, 396 So.2d 1275 (La.1981), the Supreme Court held that the determination of whether a voting member of a local church organized as a non-profit corporation may inspect the corporation's records did not entangle civil courts in questions of religious doctrine, polity or practice. In Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980), the Court of Appeal held that ecclesiastical matters were not at issue when a court must determine whether church members conducted an election of the board of directors according to the procedures set forth in the church's charter.
In our opinion the facts of the instant case present a situation even more compelling than presented in the above cases, which leads us to conclude this is not an ecclesiastical matter. This case involves an institution which, although perhaps having characteristics of a church, necessarily functions as a school. Moreover, the dispute centers on the institution's role as a school, not a church. Clearly, the Seminary was trying to dismiss Babcock from the school, not from the ministry, for it has no power to do the latter.
The question raised by Babcock's petition is whether the Seminary followed its own due process guidelines in seeking to dismiss Babcock. This is not an inquiry into the validity of the Seminary's divorce/separation policy or the Southern Baptist denomination's stance on separation or divorce.
Quite simply, by outlining its divorce/separation policy and by describing its due process procedures in the handbook, the Seminary has taken the issue of a student's dismissal out of the arena of a religious controversy and into the realm of contract dispute. Overall, the presence or absence of due process attending the dismissal of Babcock for violation of a school policy has nothing to do with theological law, custom, or policy and therefore is not an ecclesiastical matter within the exclusive domain of religion.
Furthermore, even considering the Seminary as a wholly religious institution, those individuals who attend the Seminary are students who, like any other students, have rights and responsibilities which may, in certain instances, be subject to review by civil courts. One of these rights is the right students have to rely on statements made in the institution's publications. See, Tedeschi v. Wagner College, 49 N.Y.2d 652, 404 N.E.2d 1302, 404 N.E.2d 1302 (1980).
The due process procedure was placed in the handbook in response to the S.A.C.S.'s call for a clear definition of disciplinary procedures. (Trial transcript p. 93). For whatever reasons, for years the Seminary has sought and obtained accreditation from the S.A.C.S., a purely secular association. The Seminary cannot accept the benefits it necessarily derives from secular accreditation, purport to adhere to the requirements for secular accreditation, and then claim that civil courts have no right to review whether it follows its own guidelines admittedly established for the purpose of obtaining secular accreditation.
Thus, the Trial Court did not err in holding that this dispute was more in the nature of a contractual dispute than an eccelsiastical one, and neither did the Trial Court err in holding that school publications given to students were part of the terms of a "contract" between a school and its students. Courts in other jurisdictions have indicated that the relationship between a student and a private educational *96 institution may be considered contractual in nature and school publications may serve as evidence of the "contract". See, Lexington Theological Seminary v. Vance, 596 S.W.2d 11 (Ky.Ct.App.1979); Tedeschi v. Wagner College, supra; Napolitano v. Princeton Univ. Trustees, 186 N.J.Super. 576, 453 A.2d 279 (1982). Likewise, we believe Babcock and the Seminary were in a type of contractual relationship during his matriculation at the Seminary.
The District Court correctly overruled the Seminary's exception to the Court's subject-matter jurisdiction. Under the facts of this case and given the nature of the dispute between the Seminary and Babcock, First Amendment principles do not prohibit civil courts from assuming jurisdiction in this case.

INJUNCTION APPEAL (89-CA-1248)
The May 17, 1989 District Court judgment which the Seminary has appealed in 89-CA-1248, 1) overruled the Seminary's second and similar subject matter jurisdictional exception, 2) denied the Seminary's motion for dissolution of a temporary restraining order which was issued to compel the Seminary to award Babcock a degree at the May 20 graduation and denied the Seminary's request for wrongful-issuance damages, and 3) granted Babcock a preliminary injunction against the Seminary, forcing the Seminary to graduate and confer a degree upon Babcock. Following writ proceedings in which this Court stayed the preliminary injunction until disposition of the jurisdiction issue in the Seminary's first appeal, the Seminary appealed the May 17, 1989 judgment.
The Seminary argues, as it did in 89-CA-0233, that the principle of separation of church and state prohibits civil courts from assuming subject-matter jurisdiction of the instant dispute. For the same reasons we gave in 89-CA-0233 we find no merit in the Seminary's argument. Thus, in this appeal, as in 89-CA-0233, we find that the dispute between the Seminary and Babcock is neither one involving the relationship between a church and one of its ministers nor one of a purely ecclesiastical nature. For this reason we hold that civil secular courts have jurisdiction to decide the dispute.
Therefore, this Court's stay order issued in 89-C-0948 to stay the District Court's grant of a preliminary injunction until determination of the jurisdictional issue, is vacated.
Turning now to the merits of the dispute between Babcock and the Seminary, the Seminary contends that the District Court erred in granting a preliminary injunction, forcing it to graduate and award a degree to Babcock. We disagree.
The Seminary informed Babcock that he would not receive his degree in a letter from the Seminary's attorney to Babcock's attorney dated May 9, 1987 which stated:
This is to advise you that New Orleans Baptist Theological Seminary will not grant to Mr. Babcock a degree at the commencement scheduled for May 20.
Thus, the Seminary did not notify Babcock initially that it sought to enforce the "Requirements for Graduation" provision of the Bulletin. The Seminary first indicated it relied on the Bulletin in its writ application asking review of the injunction which would require the Seminary to confer a degree.
The "Requirements for Graduation" provision of the Seminary's Bulletin allows the Seminary to withhold a degree from a student if "in the opinion of the appropriate faculty committee any student proves unfit for spiritual, moral, mental or other reasons." According to the affidavit, submitted in lieu of testimony, of Dr. Landrum Leavell, president of the Seminary, the faculty voted on May 5, 1989 to withhold a degree from Babcock having found him unfit religiously and spiritually to receive a ministerial degree. According to Dr. Leavell, Babcock did not appeal the faculty decision to him; Babcock offers no proof to the contrary.
Babcock argues that no matter what provision the Seminary relies upon, the Seminary failed to show any conduct after August 19, 1987 that would justify withholding his degree. And, he contends that because *97 the Seminary by virtue of the May 17 final "consent" judgment agreed not to dismiss him for his conduct prior to August 19, 1987, the Seminary cannot use that conduct as a reason to withhold the decree. There is nothing in the record to suggest that the faculty decision to withhold the degree was based on anything other than Babcock's conduct prior to August 19, 1987.
The Seminary counters with the argument that there is a difference between dismissing Babcock and withholding a degree from him, and that it may withhold a degree for any reason, which would include conduct that occurred prior to August 19, 1987.
We disagree. There is no significant difference. If the Seminary cannot dismiss Babcock for conduct prior to August 19, 1987, it cannot withhold a degree because of that conduct. Moreover, we believe that when the Seminary acquiesced in the consent decree that permitted Babcock to continue as a student it was implied in that agreement that Babcock would receive a degree if he successfully met the academic requirements.
Jurisprudence indicates that in state schools, an academic decision of the faculty is set aside only if the decision is arbitrary, capricious or unreasonable. Regents of University of Michigan v. Ewing, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). Courts have been more willing to review the action of educational institutions when the decision in dispute relates to non-academic matters. And, even the disciplinary decisions of private schools are subject to judicial review at least for arbitrariness. See, Lexington Theological Seminary, supra; Tedeschi, supra; Coveney v. Pres. & Trus. of Holy Cross Col., 388 Mass. 16, 445 N.E.2d 136 (1983). In this case, the Seminary's decision to withhold a degree from Babcock was unquestionably a non-academic determination. Indeed, the Seminary admits that he satisfactorily completed all course requirements necessary to receive his degree.
Following the consent final judgment the Seminary allowed Babcock to continue his studies toward his degree. Prior to May 9, 1988, he received notification of his impending graduation and received related correspondence on the subject of graduation festivities. It is grossly unfair and arbitrary to allow a student to be lulled into thinking he would receive a degree upon satisfactory completion of his coursework, and then to refuse him the degree without sufficient explanation.
Nor do we believe that Babcock bore the burden of proving that the Seminary's decision was either arbitrary or that it was based on his conduct prior to August 19, 1987. It was incumbent upon the Seminary to show by competent evidence that their decision was reasonably based on facts that shows Babcock is unfit to receive a degree. At the very least, the Seminary should have articulated some specific reasons for its decision to withhold a degree from Babcock even if the reasons involve reference to "spiritual or religious" unfitness. Only then would an appeal to the president of the Seminary be meaningful.
We note also that the "Requirements for Graduation" does not provide for notice or a hearing during which a student would be able to respond to the faculty decision. These due process infirmities convince us that the provision in the Bulletin contains serious deficiencies such that its application in this case is arbitrary and unjust.
In sum, the Seminary's function of educating students and awarding degrees to students is, in fact, unrelated to the Convention's or the Southern Baptist denomination's role vis-a-vis its ministers. The Seminary has nothing to do with the licensing or ordination of local church ministers nor does it have any power to determine a student's fitness for ministry. The dispute at issue does not touch upon theological or ecclesiatical matters. Secular civil courts may assume jurisdiction to resolve this dispute which is essentially contractual in nature. The scope of review is to determine if the Seminary acted arbitrarily. By acquiescing *98 in the consent decree which permitted Babcock to remain in school in spite of his conduct prior to August 1987, the Seminary acted arbitrarily when it refused to confer a degree because of that conduct, or if it refused to confer a degree for other reasons without informing Babcock of these reasons.
We believe Babcock is entitled to receive his degree, and we find no error in the District Court's grant of a preliminary injunction.
Accordingly, the judgments in 89-CA-0233 and 89-CA-1248 are affirmed. All costs of these appeals are assessed to the Seminary.
AFFIRMED.
CIACCIO, J., dissenting with reasons.
CIACCIO, Judge, dissents with reasons.
I respectfully dissent.
After acknowledging that the Seminary is a church, entitled as such to certain constitutional rights and protections, the majority opinion finds that these rights do not apply to this controversy, based upon the following reasoning.
1) The Seminary is a church but it is also a school.
2) Babcock is a student, not a minister of the Seminarythus all jurisprudence governing the relationship of churches and their ministers is inapplicable.
3) This dispute is not an ecclesiastical matter between a church and a minister but a contractual dispute between a school and its student.
4) The school publications, including the school handbook, create a contract that is subject to judicial review.
5) By agreeing in the consent judgment not to dismiss Babcock for his earlier conduct, the Seminary lulled Babcock into thinking he would receive a degree upon completing his studies, and it would be "grossly unfair and arbitrary" to now refuse him his degree.
6) To deny Babcock a degree based upon a faculty finding of "spiritual or religious unfitness" without further articulation, and without provisions for a hearing, except an appeal to the Seminary president, was arbitrary and unjust.
With regard to the procedural issue, the clear language of the consent decree only provided for Babcock to continue his studies while the Seminary's appeal was pending. He knew that the Seminary strenuously protested his right to continue his studies, was appealing the denial of its first amendment rights, and gave him no reason to believe that he would get a degree if their appeal was successful. Accordingly, the granting of the consent judgment should have no bearing on the merits of this appeal.
Assuming, arguendo, that the majority's contract theory is applicable, the Seminary's Bulletin is just as much a part of the "contract" as is the Student Handbook. The Bulletin contained a provision of Requirements for Graduation which allows a faculty committee to withhold a student's degree if, in the opinion of the committee, the student is unfit for spiritual, moral, mental, or other reasons. The faculty committee made such a determination, finding Babcock unfit religiously and spiritually to receive a ministerial degree. Babcock did not appeal this decision to the Seminary President. Babcock cannot claim ignorance of the contents of the bulletinhe was a graduate student well versed in the English language. The S.A.C.S. did not require the Seminary to delete this language as a prerequisite to accreditation and it is not proper for this court to treat this provision as if it has no validity or does not exist. Assuming the validity and enforceability of this provision, the faculty committee acted, Babcock did not appeal to the President, and the decision is final.
The majority refuses to recognize the validity of this action because the faculty committee did not articulate some specific reasons for its decision. How was the faculty committee to be more specificshould it have enumerated the teachings of Jesus Christ as enunciated in the Holy Bible and then explained how Babcock's conduct fell short of those religious standards? If so, *99 would our court then have the right to review and ultimately determine the correctness of a decision based on spiritual and religious considerations? Civil courts have no authority to substitute their opinions for those of religious bodies acting on spiritual or ecclestiastical grounds, and we should not do so in this case.
The foregoing reasoning assumes that this dispute is a secular matter subject to judicial review. I do not agree with this approach. Although Babcock is a student, he is also a seminarian. He was admitted to a religious institution for advanced theological training after professing a calling to the ministry and meeting other qualifications not required in a purely secular institution. He attended tuition free because the Southern Baptist Convention funds the Seminary as part of its religious mission.
The status of the Seminary as a church, its mission and its relationship with its ministers is set out in detail in E.E.O.C. v. Southwestern Baptist Theological Seminary, 651 F.2d 277 (5th Cir.1981), all of which apply to the Southern Baptist Seminary. A reading of that well-reasoned opinion describes the special relationship that exists between a church and its ministers and the constraints placed upon civil courts in connection with that relationship. Although Babcock cannot have his ministerial license withdrawn by action of the Seminary, he cannot represent that his credentials as a minister have the stamp of approval of the Seminary without having been awarded their degree.
The Seminary has an important interest, protected by the Constitution, to determine which ministers meet the spiritual, religious and moral standards of the Southern Baptist Convention and to award its Doctor of Divinity degree only to those applicants who meet those standards. By awarding the degree the Seminary represents to the world that the degree recipient has met all of the spiritual, moral and religious requirements of the Convention and is fully qualified to minister to the spiritual needs of the church to which he is called. The determination that a ministerial student is qualified to go forth into the public ministry and to carry out the teachings of the Convention is not a judgment call subject to review by the civil authorities.
Accordingly, I would reverse the judgments of the trial court, vacate the injunctions and dismiss plaintiff's petitions.