VOLTERRA, J.
INTRODUCTION
The defendant Massachusetts Institute of Technology (“MITj seeks pre-trial relief from plaintiff Christopher B. Anderson’s (“Anderson”) jury demand, pursuant to Mass. R. Civ. P. 39(a) (2). See Mass. R. Civ. P. 39 (c) . Defendant MIT also seeks an order limiting the scope of injunctive relief to an order for a new disciplinary hearing on Anderson’s expulsion from MIT.
After hearing the parties’ oral arguments, considering their submissions and pleadings, and reviewing all of the papers and documents filed in this action, I conclude that the only issues properly before this court are whether MIT acted in good faith and on reasonable grounds when it expelled Anderson and refused to grant him a Bachelor of Science degree.
Accordingly, the court is to review the procedures followed by MIT to ensure that the Committee on Discipline, Rules and Regulations’ (“COD”) actions and MIT President Charles Vest’s (“Vest”) actions fell within the range of the reasonable expectation of an *294 accused who read the relevant rules administratively promulgated by MIT. The court is also to review the proceedings to ensure that the hearing that resulted in Anderson’s expulsion was conducted with basic fairness. Cloud v. Trustees of Boston University, 720 F.2d 721 (1983).
Here, the relief sought by Anderson is equitable in nature. This is a non-jury case in all respects except the measure of money damages sought by Anderson in the event that Anderson can demonstrate that MIT materially breached its procedures in deciding to expel him, and that his expulsion was arbitrary and capricious. Obviously a court of equity retains a great deal of discretion in the orderly handling of litigation of this type. Indeed, in a non-jury case dealing with the Issues presented here a court would normally follow a finding for the plaintiff on a breach of the academic institution’s own disciplinary procedures with a remand of the disciplinary case to the institution, with instructions. See Clayton v. Trustees of Princeton University, 519 F.Supp. 802, 811 (1981).
Only in the event that Anderson convinces the trier of fact that MIT could not possibly act objectively and in good faith upon remand will Anderson arguably be entitled to the remedy of a decree that the degree be issued to him, and that a jury be empaneled to try the issue of money damages. Clayton, id.
Accordingly, within my discretion, I bifurcate the equitable claims from plaintiffs claims for money damages. Trial is to follow on Anderson’s equitable claims (a) that MIT breached the terms of its declared written disciplinary procedure: (b) that the hearing was not conducted fairly and in good faith; and (c) that the conclusion of the COD that Anderson was implicated in the burglary as a co-conspirator and should be expelled from MIT was arbitrary and capricious.
BACKGROUND
In 1988 Anderson, now a resident of Cambridge, matriculated as a student at MIT. Anderson enrolled in a specialized MIT degree program which, upon successful completion, grants a Bachelor of Science Degree and a Master of Science degree after a five year period of study.
In the spring of 1993 Anderson succeeded in completing the requirements necessary for an award of the Bachelor of Science degree, needing only an additional semester of work to earn his Master of Science degree, as he had already successfully defended his thesis.
On May 21, 1993, as students were departing on summer vacation, Anderson was implicated in a botched nighttime conspiracy to steal computer equipment from MIT. The four conspirators were accused of attempting to steal equipment valued at approximately $20,000.00. All of the equipment was recovered, with MIT suffering less than $600.00 in damage. Except for this escapade, Anderson had no prior disciplinary problems at MIT.
MIT campus police brought complaints against Anderson within MIT’s disciplinary mechanism and with the Cambridge Division, District Court Department. In District Court Anderson was charged with: (a) breaking and entering in the night with intent to commit a felony, to wit, larceny over $250.00; (b) possession of burglarious implements; and (c) willful and wanton destruction of personal property over the value of $250.00.
On July 15, 1993, Anderson appeared at the Cambridge Division to accept a plea bargain arranged by his lawyer. Anderson admitted to sufficient facts to support a finding of guilty as to all three charges. The judge, in conformity with the plea bargain, continued the three criminal cases for one year, ordering Anderson to pay restitution to MIT for its damage. As part of the plea bargain Anderson agreed to give evidence against one of the other co-conspirators who had maintained his innocence. Anderson was subpoenaed to court as a Commonwealth witness for the co-conspirator’s trial.
The defendant MIT has adopted and published written policies and procedures on student discipline. A committee has been established at MIT which is known as the Committee on Discipline, Rules and Regulations (“COD”).
Anderson requested and was given a disciplinary hearing by MIT on the charges which had been lodged against him by the MIT police with the MIT administration. On November 13, 1993 the COD held a hearing which resulted in the COD finding that Anderson had participated in the attempted burglary. The COD, in conformity with its procedures, recommended to the President of MIT that Anderson be expelled from the institution and that Anderson be deemed ineligible to re-apply for admission for twenty years.
On November 23, 1993, MIT President Charles Vest informed Anderson that he concurred with COD’s recommendation. Vest is the only person at MIT cloaked with the authority to expel a student. On December 11, 1993, Anderson, following MIT procedure, petitioned Vest for reconsideration. On December 23, 1993, Vest met with Anderson and his parents to discuss Anderson’s expulsion.
On January 14, 1994, Vest informed Anderson that he had determined that the expulsion order should be affirmed. This action by MIT closed the administrative procedure which had resulted in Anderson’s expulsion from the institution.
On January 24,1994, Anderson brought this action by filing a four count complaint seeking injunctive relief and money damages. Anderson by his complaint alleged:
(I) breach of contract,
(II) interference with the right of privacy pursuant to G.L. c. 214, §1B,
(III) defamation and
*295 (IV) infliction of emotional distress.
On June 3, 1994, the court (Lopez, J.) allowed MIT’s motion for summary judgment on Anderson’s claims for interference with the right of privacy, defamation and for infliction of emotional distress. Thus, the only claim left for decisional purposes is Anderson’s assertion that MIT breached its contract with him.
DISCUSSION
Anderson’s breach of contract claim is broadly pled, raising a number of alternative theories. The first is that MIT’s disciplinary committee made its decision to expel on evidence which was not clear and convincing, in breach of its own regulations and in breach of Anderson’s contract with MIT (emphasis supplied). The second theory is that MIT breached the terms of its written student disciplinary procedure. The third theory is that MIT breached the contract established between the institution and a matriculating student that if all of the institution’s degree requirements are met the degree will be awarded. Finally, Anderson’s fourth theory is that MIT contracts with a matriculating student that any disciplinary proceeding conducted for such a student will be conducted with fundamental fairness but that MIT breached this agreement by not conducting the hearing within Anderson’s reasonable expectation, based upon MIT’s declared procedure.
Anderson’s shotgun approach to the breach of contract claim is compelled by the unsettled state of the . law with respect to student rights at private universities.[1] Constitutional protection is unavailing to Anderson, a student at a private universiiy.
The rights of students at private universities were developed during the 1960s as a result of the tumult of the student movement and protests against the Vietnam War. Legal commentators demonstrated that a student has a valuable interest in preserving his status — status not of social position within society but, rather, as a valuable interest derived from a relationship with the educational institution. These status interests are more valuable in today’s competitive job market than tangible forms of wealth.[2]
Legal commentators have attempted to formulate a comprehensive doctrinal basis for legal intervention to protect private universiiy students. Two rationales have developed to protect the student. The first is that a person enrolled in a college or university has an interest in his or her status as a student which is in the nature of a property right. Under this analysis a student’s status is to be protected by resort to the case law developed to protect members of private associations. This common law case line follows the law of contracts. This approach has been criticized by legal commentators who argue that the law of contract does not permit a court’s deference to the university’s own rules. Students who have succeeded in showing unjustified or capricious discipline recover damages which are actually awarded in tort. Moreover, injunctive relief is normally only granted to protect rights related to property and status, whereas breaches of contract are not usually enjoined. In addition, the judicially imposed requirement that the discipline not be malicious or in bad faith, and the court imposed procedural guarantees where none existed in the relationship between the student and the university are not doctrines embraced by the law of contracts. Hofman & Abrams, supra 84 Yale L.J. at 138-39.
Thus, although American courts have generally adopted the idea that the student’s relationship to the university is contractually governed by the documents he accepts at matriculation, including the disciplinary rules contained in those documents, this rationale is thoroughly denounced by the commentators. Id, 84 Yale L.J. at 144.
The Court of Appeals in New York in Tedeschi v. Wagner College, 427 N.Y.S.2d 760, 763, 404 N.E.2d 1302 (1980), questioned the contract approach to discipline cases. “Contract theory is not wholly satisfactory, however, because the essentially fictional nature of the contract results in its generally being assumed rather than proved, because of the difficulty of its application, and because it forecloses inquiry into, and a balancing of, the countervailing interests of the student on the one hand and the institution on the other.” Citing Matter of Ryan v. Hofstra Univ., 324 N.Y.S.2d 964; Center for Law & Education, “The Constitutional Rights of Students: Analysis and Litigation Materials for the Student’s Lawyer” at p. 372; Abrams & Hofman, Common Law Rights for Private University Students: Beyond the State Action Principle, 84 Yale L.J. 120, 122, 143-44; Rabban, Judicial Review of the University-Student Relationship: Expulsion and Governance, 26 Stan.L.Rev. 95, 97, 104-06.
The Tedeschi court went on to question the law of associations approach and ultimately adopted their own approach in what the court described as the one-sided relationship between the institution and the individual. Id, 427 N.Y.S.2d at 764. The Tedeschi court held that when a university has adopted procedures in relation to suspension and expulsion those procedures must be substantially complied with. Id.
Thus, the approach that I adopt[3] is as follows:
1. The relationship that a matriculating student has with his university is a properly interest.
2. A private university has a right to manage its own affairs and establish its own rules and regulations in the conduct of the university’s business and goals — including student discipline.
3. A student’s property interest can be nullified upon the showing by substantial evidence that the student’s conduct was inimical to the university’s interests and goals.
4. A court may only intervene in the student-university relationship when the student demonstrates that *296 the university’s action was arbitrary and capricious; that the university failed to follow its own disciplinary rules; and that the university did not afford the student a hearing which was fundamentally fair. Such hearing at the very least should provide the student with written notice of the charges against him or her; a written description of the evidence upon which the charges are based; the names of the witnesses which the university intends to call at the hearing; an unbiased disciplinary committee or tribunal; an opportunity to be heard and present witnesses in his behalf; and the right to confront and controvert the evidence presented by the university.
Essentially this procedure imitates the standard of review established by G.L. c. 30A. The standard of review which I have adopted is found in Coveney v. President and Trustees of the College of the Holy Cross, 388 Mass. 16, 19 (1983). “A private university, college or school may not arbitrarily or capriciously dismiss a student (citations omitted). If school officials act in good faith and on reasonable grounds, however, their decision to suspend or expel a student will not be subject to successful challenge in the courts (citations omitted). Violations of reasonable rules and regulations are a recognized ground for dismissal of a student (citations omitted).” Moreover, “(i]t is clear that because the college is a private institution [plaintiff] had no constitutional right to a hearing (citations omitted). Furthermore, [plaintiff] did not have a contractual right to hearing based on a provision in the student handbook that was in effect when he matriculated in the college. The student handbook that was in effect at the time of the incident that led to [plaintiffs] expulsion is clear that there was no right to a hearing before expulsion from the college. A college is ‘clearly entitled to modify its rules and regulations so as to properly exercise its educational responsibility’ (citation omitted).” Id. at 21-22. “. .. We reject the [contention] that [plaintiff] was entitled to have an attorney present at the hearing. Because the college is a private institution [plaintiff] had no constitutional right to an attorney (citation omitted) . . . The hearing [was] not invalid on the ground that the [university’s] president was informed of the events prior to the hearing.” (Citations omitted.) Id. at 22.
Most importantly the Coveney court stated that they “dispose[d] of [that] case on the ground that the college did not violate any contractual or other rights (emphasis supplied) of the plaintiff by expelling Coveney.” Id. at 19. This dicta shows that the Supreme Judicial Court has not fully adopted a contractual analysis for disposition of school discipline cases. Accordingly, if the plaintiffs claim is not contractual he is not entitled to a jury trial on the disciplinary issues. In Babcock v. Baptist Theological Seminary, 554 So.2d 90, 97 (1989), the scope of review was limited to the question of whether the seminary had acted arbitrarily. In Gorman v. University of Rhode Island, 646 F.Supp. 799, 815 (D.R.I. 1986), the District Court judge postponed the issue of damages until after a de novo disciplinary proceeding was held by the university pursuant to his order of remand.[4] In Holert v. University of Chicago, 751 F.Supp. 1294, 1300-01 (N.D. Ill. 1990) the District Court judge ruled that for a student to prevail, the student must establish that the disciplinary committee’s determination was made arbitrarily, capriciously and in bad faith. The judge further ruled that a disciplinary committee’s decision is arbitrary and capricious only if it is without any discernable rational basis. The judge taught that “[c]ourts have adopted this deferential standard because of a reluctance to interfere with the academic affairs and regulation of student conduct in a private university,” citing People ex rel. Tinkoff v. Northwestern University, 77 N.E.2d 345, 349 (1st Dist. 1947), cert. denied 335 U.S. 829 (1948).
In conclusion, all of the issues which surround the disciplinary hearing and the expulsion of Anderson from MIT warrant a jury-waived review of whether MIT acted arbitrarily and capriciously. Such a review is not “of any issue triable of right by a jury . . .” within the meaning of Mass. R. Civ. P. 38(b).
ORDER
For the foregoing considerations, I ORDER a jury-waived review of the disciplinary proceedings conducted at MIT which may be followed, if plaintiff succeeds with his burden of proof to show an unlawful expulsion, by a jury trial on his damage claim.

 A student’s rights at a publicly funded college or university are guaranteed by 14th Amendment due process. Generally, a student at a public college is guaranteed notice of the specific charges; the nature of the evidence upon which they are based; a hearing at which the student may explain and present evidence in his behalf; and a showing that any disciplinary action taken against the student was supported by substantial evidence. Abrams & Hofman, Common Law Rights for Private University Students: Beyond the State Action Principle, 84 Yale Law Journal 120, 120-21 (1974) (hereafter: Abrams & Hofman].

 Abrams & Holman, supra, 84 Yale L.J. at 124, quoting Professor Richard Reich, The New Property, 73 Yale Law Journal 733, 738 (1964).

 See Abrams & Hofman, supra, 84 Yale L.J. at 145-50.

 This decision was appealed. The First Circuit found that the original disciplinary hearing was not in violation of due process. Thus, the damages issue was never reached. Gorman v. University of Rhode Island, 837 F.2d 7 (1st Cir. 1988).