660 So.2d 563 (1995)
Debra G. HARRISON, Plaintiff-Appellant,
v.
Merle GORE, et al., Defendants-Appellees.
No. 27254-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Writ Denied December 8, 1995.
*564 Nelson & Hammons by John L. Hammons, Shreveport, for appellant.
Rountree, Cox, Guin & Achee by Roland J. Achee, Shreveport, Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Sidney E. Cook, Jr., F. Drake Lee, Jr., Shreveport, for appellees.
Before NORRIS and HIGHTOWER, JJ., and PRICE, J. Pro Tem.
NORRIS, Judge.
Debra Harrison appeals a judgment sustaining the defendants' exceptions of prescription and dismissing her suit with prejudice. Ms. Harrison had alleged in petition that Merle Gore, her high school basketball coach, molested and sexually harassed her while she played on his team at Trinity Heights Christian Academy, a private Baptist *565 parochial high school, between 1982 and 1985. Ms. Harrison, however, did not file suit until February 1993, nearly eight years after the last tortious act alleged in petition. Defendants Merle Gore, Trinity Heights, and Trinity's insurer, filed exceptions of prescription which the District Court sustained. On appeal, Ms. Harrison urges the court erred in failing to apply the 10-year contractual prescriptive period to her claim and in failing to apply the jurisprudential concept of contra non valentem to suspend the running of prescription. For the reasons expressed, we affirm.

Procedural and factual background
Ms. Harrison enrolled in Trinity Heights in the fall of 1982, when she was 15 years old and in the 10th grade, and played basketball under Coach Gore. She graduated in May 1985. According to her petition, over these three years Coach Gore subjected her to a "consistent pattern of sexual harassment and molestation." This started with mild innuendoes, progressed to direct sexual propositions, and concluded with forced oral intercourse and other sexual acts. Her last sexual encounter with Coach Gore occurred in the spring of 1985. As a result of the coach's conduct, she alleged, she sustained serious, debilitating emotional and psychological harm. She further alleged that Trinity Heights was vicariously liable for the coach's acts and negligent in failing to supervise him adequately. As noted, she filed suit on February 16, 1993. Both Trinity Heights and its insurer, Preferred Risk Group, and Merle Gore individually, filed exceptions of prescription.
The only evidence offered on trial of the exceptions was Ms. Harrison's deposition, taken over three days in July 1993. Here she described in great detail many of Coach Gore's offensive acts. These started rather modestly, with an unexpected pat on the behind, sexually explicit comments, and bear hugs that were more than just bear hugs. At this time she did not complain because she felt that nobody would believe her over the powerful and influential Coach Gore. The following year the coach's conduct progressed to forcing Ms. Harrison to fondle his genitals, or taking her into a locker room where he kissed her and made her perform oral sex on him. She did not strongly resist because Coach Gore had told her he loved her; apparently aware of problems she was having at home, he had offered to let her move into his townhouse and promised ultimately to marry her. In her senior year she started to date an airman from Barksdale, but Coach Gore gave her the "cold shoulder," and ostracized her like he did any girl whose priorities were not right. He made her perform oral sex on him several times, always instructing her to tell no one. She stated that she complied because of his influence and power over her; also, he had promised to help her get a trainer position at a state college after graduation. Their final sexual encounter occurred in May 1985.
Ms. Harrison also described the extent of the psychological and emotional problems that have plagued her ever since about the 10th grade. These have included serious depression, nightmares, panic attacks and suicidal thoughts; from 1988 through 1993, she had been in some form of counseling or psychoanalysis almost continuously (although part of this has been in connection with her college study). Her treatment has consisted exclusively of counseling and an antidepressant drug, BuSpar. One psychiatrist, Dr. Hughes, found "no severe psychological deficits." Dep., 265. One counselor, Susan Meny, in January 1991 diagnosed "adjustment disorder with mixed emotional features," which she attributed to physical pain resulting from a slip and fall on the job (at Timberlawn) and financial stress. Dep., 339-340.
Early on, Ms. Harrison disclosed Coach Gore's conduct with her to only a few close friends, her lovers and her counselors. One of the friends, Becca Golsby, with whom she discussed the matter, advised her in 1987 to sue Coach Gore, but another, Paula Guier, urged her not to. A therapist, Betty Thompson, advised her in 1988 that what Coach Gore had done to her was molestation. Ms. Harrison replied that she knew it was wrong, but not that it was molestation. Despite her problems, Ms. Harrison worked her way through college, earning a B.S. in counseling *566 (psychology) in 1989. She is currently pursuing an M.A. in Expressive Therapy at the University of Louisville.
Shortly after she earned her bachelor's degree Ms. Harrison took a job as a mental health worker at Timberlawn Psychiatric Hospital in Dallas. There she met a patient, Linda Baker, who related that she had a sexual relationship with a therapist or teacher at a college in Shreveport. When Ms. Harrison replied that she also had a sexual relationship with a coach in Shreveport, Linda suggested that Ms. Harrison speak to her attorney, who was then pressing her case against the college. Ms. Harrison actually spoke with the attorney, John Hammons, sometime between May and August 1990; she testified, however, that she was "powerless" and "not emotionally capable of pursuing a lawsuit" at the time. She also felt that her counselors would have recommended against it. However, after additional therapy aimed primarily at developing coping strategies, she revealed to her parents in November 1991 that she had been abused by Coach Gore. Obtaining their approval and support was apparently part of the healing process; she had been somewhat alienated from them since they discovered her involvement with a lesbian lover in high school. Ms. Harrison freely admits that she is bisexual and practices lesbianism, but does not attribute this to the mistreatment she received from Coach Gore. When she finally felt "emotionally at a point" that she could go through with a lawsuit, she contacted Mr. Hammons. The instant suit was filed on February 16, 1993.
As noted, the defendants responded with exceptions of liberative prescription. The matter was submitted in March 1993 on the pleadings and Ms. Harrison's deposition; the parties filed extensive briefs.

Action of the trial court
By written opinion filed in August 1994, the District Court noted that delictual actions prescribe in one year, La.C.C. art. 3492, and that Ms. Harrison's claim had prescribed on its face; however, she claimed the benefit of the doctrine of contra non valentem agere nulla currit praescriptio, which means that no prescription runs against a person unable to act. Corsey v. State Dept. of Corr., 375 So.2d 1319 (La.1979). The court noted Ms. Harrison's assertion that she was initially afraid of Coach Gore and unsure whether she would be believed; it also cited her claim that she felt unable to pursue a lawsuit until she received the support of her parents. The court found, however, that neither Coach Gore nor Trinity Heights took any affirmative steps to prevent her from filing suit or even from telling her parents about Coach Gore's conduct sooner than she did. The court also stated that although she claimed to be emotionally incapable of suing earlier, there was no evidence of organic mental illness or diagnosis of psychological dysfunction, as would be required to suspend prescription. The court therefore declined to apply contra non valentem.
The court then addressed Ms. Harrison's contention that Coach Gore's conduct was a breach of the contract between her parents and Trinity Heights, and thus subject to the 10-year prescriptive period of La.C.C. art. 3499. The contract with Ms. Harrison's father provides that for payment of tuition:
The only obligation of Trinity Heights Christian Academy hereunder is to furnish the physical plant and personnel to make available schooling or instruction to the student commensurate with his grade level during September through the following May with specific dates of attendance to be fixed within the exclusive discretion of the Academy.
The student must abide by the rules of the Academy as contained in the Trinity Heights Handbook, a copy of which is available in the office of the principal and such other instructions and directives * * *. Failure to do so will result in disciplinary action which may include suspension or expulsion.
The court rejected Ms. Harrison's argument that the reference to the Student Handbook expanded the school's obligation to one of providing a "safe, Christian education in conformity with generally accepted and recognized educational standards and concepts." The contract, the court concluded, obligated the school to no more than *567 providing a physical plant and personnel; consequently, the court did not find a breach of that contract.
The court therefore sustained the exceptions of prescription and rendered judgment dismissing Ms. Harrison's suit with prejudice.

Applicable law
Liberative prescription runs against all persons unless exception is established by law. La.C.C. art. 3467. It runs against absent persons and incompetents, including minors and interdicts, unless exception is established by law. La.C.C. art. 3468. The one-year liberative prescriptive period for delictual actions begins to run from the date the injury or damage is sustained. La.C.C. art. 3492. When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed. Wimberly v. Gatch, 635 So.2d 206 (La.1994). Courts have created the doctrine of contra non valentem as an exception to the general rules of prescription. Id., and citations therein. The doctrine of contra non valentem suspends prescription when the circumstances of the case fall into one of four categories:
1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Wimberly v. Gatch, 635 So.2d at 211; Corsey v. State, 375 So.2d at 1321-1322.
In Wimberly v. Gatch, a nine-year old boy was injured when his older brother's scout leader sexually abused him. In the course of therapy with a clinical social worker, the boy eventually disclosed that he had also been sexually abused by a 16-year old neighborhood boy over a period of three years. When the victim's parents sued the 16-year old's parents, the latter responded with the exception of prescription. The Supreme Court overruled the exception, citing the clinical opinion known as "Child Sexual Abuse Accommodation Syndrome" ("CSAAS"). This theory holds that many child victims, being secretive and helpless, exhibit traits of entrapment and accommodation, followed by delayed, conflicted and unconvincing disclosure, and finally retraction. Wimberly v. Gatch, 635 So.2d at 214, and citations therein. The court found that when the victim suffered from the syndrome, he obviously could not convey the fact of the tort to his parents, who were the only persons authorized to take action in his behalf. Id., at 216-217. The court therefore sanctioned CSAAS as a form of contra non valentem in situations where a child victim during his minority failed to disclose to his parents the fact of his abuse until after prescription had accrued. The court distinguished cases which "involve majors, persons of legal age filing suit on their own behalf against the defendant tortfeasors" such as Laughlin v. Breaux, 515 So.2d 480 (La.App. 1st Cir.1987), Bock v. Harmon, 526 So.2d 292 (La.App. 3d Cir.), writ denied 531 So.2d 275 (1988), and Doe v. Ainsworth, 540 So.2d 425 (La.App. 1st Cir.), writ denied 542 So.2d 511 (1989); cf. Held v. State Farm Ins. Co., 610 So.2d 1017 (La.App. 1st Cir. 1992), writ denied 613 So.2d 975 (1993). Wimberly v. Gatch, 635 So.2d at 212-213. The Supreme Court also noted, however, that the "vast majority" of the child sexual abuse victims were under the age of eight. Id., at 214. The cases of Bock v. Harmon and Doe v. Ainsworth involved young men who were abused from age 12-18 and 15-16, respectively, and filed suit after they reached majority; the courts declined to apply contra non valentem to these claimants. The case of Held v. State Farm involved a young woman who was abused by her father from age 12-18; she sued two days before her 21st birthday, and presented evidence from a clinical social worker and a clinical psychologist that she suffered from post-traumatic stress disorder which disabled her from making adult decisions. *568 The court of appeal applied contra non valentem to her situation and overruled the exception of prescription.
Another prescriptive period, 10 years, is provided for personal actions. La. C.C. art. 3499. This applies to actions on contracts. La.C.C. art. 3500; Stokes v. Georgia-Pacific Corp., 894 F.2d 764 (5th Cir. 1990). The 10-year prescriptive period, however, applies "unless otherwise provided by legislation," or only in the absence of a legislative provision that establishes a shorter or longer period. Art. 3499, Revision Comment (b). The nature of the duty breached determines whether the action is in tort or in contract. Roger v. Dufrene, 613 So.2d 947 (La.1993). The classical distinction between "damages ex contractu" and "damages ex delicto" is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons. Davis v. LeBlanc, 149 So.2d 252 (La.App. 3d Cir.1963), and citations therein. Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are really grounded in tort. See, e.g., Sterling v. Urban Property Co., 562 So.2d 1120 (La.App. 4th Cir.1990) (apartment tenant was sexually harassed by her landlord's business partner; her action prescribed in one year); Stephens v. International Paper Co., 542 So.2d 35 (La.App. 2d Cir.1989) (timber cutting contractor negligently left open a gate, allowing cattle to escape); Newsom v. Boothe, 524 So.2d 923 (La.App. 2d Cir.1988) (legal malpractice normally sounds in tort, unless the attorney warrants a particular result); Sciacca v. Polizzi, 403 So.2d 728 (La.1981) (medical malpractice is governed by one-year prescriptive period, absent extension of warranties by the physician); Gerdes v. Estate of Cush, 953 F.2d 201 (5th Cir.1992) (agent's failure to investigate a proposed real estate purchase is governed by one-year prescription).
The District Court has great discretion in finding facts and assessing the credibility of witnesses. Stobart v. State DOTD, 617 So.2d 880 (La.1993). Such findings should not be disturbed absent a showing of manifest error; a reasonable trial court finding cannot be reversed merely because the court of appeal draws an equally reasonable yet different conclusion. Id.; Lewis v. State DOTD, 94-2370 (La. 4/21/95), 654 So.2d 311. Appellate deference to trial court findings extends both to live testimony and documentary evidence. Virgil v. American Guarantee & Liab. Ins. Co., 507 So.2d 825 (La.1987).

Discussion
By her first assignment Ms. Harrison urges the District Court erred in holding that Trinity Heights owed no contractual or other duty to provide her with a safe, Christian education in conformity with generally accepted and recognized educational standards and concepts, and further erred by failing to apply the 10-year period of liberative prescription to her claims. Apparently conceding that Trinity Heights' contract with Ms. Harrison's father does indeed obligate the school to provide a physical plant and personnel, she argues that to declare this the school's only contractual obligation is to rely on only a portion of the contract and to interpret the whole in a way that leads to absurd consequences, in violation of La.C.C. art. 2046. Ms. Harrison urges that Trinity Heights was "clearly" created to foster the ministry of its sponsoring church and "undoubtedly" includes far more than merely providing a physical plant and personnel. In support she cites the part of the contract that obligates the student to abide by the Student Handbook which, according to Ms. Harrison, obligates the school to provide her a safe, Christian education, teaching religion as the basis for moral and spiritual development.[1] For authority she cites jurisprudence *569 from Louisiana and other states which construes the contents of a college catalogue or student handbook as a portion of the student's contract with the school. See Fussell v. Louisiana Business College of Monroe, 478 So.2d 652 (La.App. 2d Cir.1985); Babcock v. New Orleans Baptist Theological Seminary, 554 So.2d 90 (La.App. 4th Cir. 1989); Aronson v. North Park College, 94 Ill.App.3d 211, 49 Ill.Dec. 756, 418 N.E.2d 776 (1st Dist.1981); Wilson v. Illinois Benedictine College, 112 Ill.App.3d 932, 68 Ill.Dec. 257, 445 N.E.2d 901 (2d Dist.1983); Smith v. Ohio State Univ., 53 Ohio Misc.2d 11, 557 N.E.2d 857 (Ct.Cl.1990); University of Texas v. Babb, 646 S.W.2d 502 (Tex.App. 1 Dist. 1982).
We have closely considered the evidence and the arguments and are constrained to find the District Court committed no error in applying the delictual prescriptive period of one year. In the first place, 10-year liberative prescription is a general provision applicable only in the absence of another, specific legislative statement. C.C. art. 3499, and Revision Comment (b). The one-year liberative prescriptive period is specific legislation regulating torts. C.C. art. 3492. It applies even to several situations where the parties are bound by contract, but the wrong is essentially delictual. See art. 3492, Revision Comment (d), for examples; Roger v. Dufrene, supra. Thus the delictual prescriptive period must be applied to tort claims unless the cause of action is clearly shown to arise from a contract.
The harm alleged in the instant petition, sexual harassment and molestation of a student by an instructor at school, is a tort. Sterling v. Urban Prop. Co., supra; Dismuke v. Quaynor, 25,482 (La.App. 2d Cir. 4/5/94), 637 So.2d 555, writ denied 94-1183 (La. 7/1/94), 639 So.2d 1164. The fact that Trinity Heights was bound by contract with Ms. Harrison's father for her benefit does not alter the essential nature of the harm alleged herein. Gerdes v. Estate of Cush, supra; Newsom v. Boothe, supra. This essential nature is underscored by the wording of Ms. Harrison's petition, in which she asserts that Trinity Heights negligently permitted Gore to abuse, molest and harass her. Pet., ¶ 27. This is an allegation of delictual harm. Sterling v. Urban Prop. Co., supra.
Consider Ms. Harrison's remedy if while attending Trinity Heights she slipped and fell on the school's premises because of a defect in the floor. This is obviously a violation of the school's general duty to provide a reasonably safe premises. La.C.C. arts. 2317, 2322. However, it would also be a breach of the contract between the school and Ms. Harrison's father, by which the school is obligated to provide a physical plant commensurate with the needs of the students. Would the existence of the contract convert the action to one in contract, subject to 10 years' liberative prescription? We think not, and we are aware of no case which so holds.
The jurisprudence cited by Ms. Harrison in brief, Fussell, Babcock, and the out-of-state cases, is distinguished in that they presented genuine disputes over obligations that arose only because there was a contract.[2] In *570 the instant case, on the record presented, Ms. Harrison has not proved that her claim arises from the breach of Trinity Heights' contract; rather, the evidence shows that her claim against Coach Gore is based on intentional conduct, and the claim against the school is based on vicarious liability or negligent failure to supervise. The trial court was not in error to treat this as a tort and decline to apply the 10-year prescriptive period. This assignment lacks merit.
By her second assignment Ms. Harrison urges the District Court erred in failing to apply the third or fourth category of contra non valentem, as recognized in Corsey v. State Dept. of Corr., supra, to her claims against both Trinity and Coach Gore. Specifically, she claims the court should have applied the reasoning of Wimberly v. Gatch, supra, to find that because of CSAAS she was actually unable to pursue litigation against Trinity Heights and Coach Gore until within a year of when she finally filed suit. In support, she cites jurisprudence holding that the claimant's uncontradicted testimony must be accepted, absent any sound reason to reject it. See, e.g., Robertson v. Scanio Produce, 449 So.2d 459, 462 (La.1984), and citations therein. She urges that her testimony as to her debilitating emotional and psychological condition was uncontradicted. Finally she contests the court's apparent decision to reject the claim of CSAAS for lack of expert testimony; she urges that Wimberly v. Gatch simply does not impose such a requirement.
The District Court discussed the evidence and the jurisprudence bearing on contra non valentem at great length. As suit was filed nearly eight years after the last tortious act, the court was legally correct to impose on Ms. Harrison the burden of proving why her claim had not prescribed. Wimberly v. Gatch, 635 So.2d at 211. The trial court's analysis of the deposition is entitled to great deference and cannot be disturbed unless it is plainly wrong. Stobart v. State DOTD, supra; Virgil v. American Guarantee, supra.
Ms. Harrison correctly asserts that nothing in the Supreme Court's opinion in Wimberly v. Gatch, supra, specifically requires expert testimony diagnosing her with a serious psychiatric illness. However, the abused minor in Wimberly was undergoing therapy with a clinical social worker who testified to facts supporting the opinion of CSAAS; the major plaintiff in Held v. State Farm, supra, also offered testimony of a social worker and a clinical psychologist that she suffered post-traumatic stress disorder which actually prevented her from taking action. Ms. Harrison has undergone therapy for years, but she offered no expert testimony in support of her claim. Thus the District Court was not in error to require more evidence than Ms. Harrison's self-serving descriptions of her own mental state.
Moreover, Ms. Harrison did not exhibit the "silence * * * intrinsic to the victimization process." Wimberly v. Gatch, 635 So.2d at 214, citing Summit, op. cit. at 178. In deposition she admitted that roughly a year and a half after the last incident she told her friend Becca Golsby what Coach Gore had done; she also discussed it with another friend, Paula Guier. Dep., 376-377. At that time she knew she had avenues of legal redress but elected not to pursue them. Dep., 379. She disclosed the abuse to a therapist, Betty Thompson, in 1988, and to a patient at Timberlawn in 1990. She candidly admitted that she had discussed it with almost all of her lesbian lovers. Dep., 455. She told one of her lovers that Coach Gore should be in jail for what he did to her. Dep., 445. She secured legal assistance for her on-the-job injury at Timberlawn. She discussed Coach Gore's conduct with her current attorney later in 1990. On the record presented, the District Court was certainly entitled to find *571 that Ms. Harrison did not fit the CSAAS profile outlined in Wimberly v. Gatch and instead to find that her February 1993 petition came more than one year after she knew of and was able to pursue her legal rights. We perceive no manifest error.
We further note the discussion in Wimberly v. Gatch which indicates that the vast majority of CSAAS victims are under the age of eight when the molestation begins, and that little boys are more reluctant than little girls to disclose it. 635 So.2d at 214, quoting from Summit, "Abuse of the Child Sexual Abuse Accommodation Syndrome," 1(4) J. of Child Sexual Abuse 153, 155 (1992). Ms. Harrison obviously does not fit into this category. In fact, the Supreme Court carefully distinguished cases involving major plaintiffs who were molested as adolescents. Wimberly, supra at 212-213.
As for Ms. Harrison's contention that the court was required to accept as true her uncontradicted testimony, we note that this rule applies only in the absence of sound reason to reject it. Robertson v. Scanio Produce, 449 So.2d at 462. While the District Court obviously took her plight seriously, the court was justifiably perplexed at this plaintiff. Her education and professional training were in the field of psychological treatment and she dealt with patients who like herself had been molested; she knew early on that she had been wronged, was aware of certain legal rights, and used an attorney for unrelated matters. When such a plaintiff contends she is emotionally unable to pursue her legal rights sooner than she did, the court has sound reason to reject the contention. Because of Ms. Harrison's educational background and her experience, the court was entitled to discredit her claimed psychological inability to sue. On the record presented, we cannot declare this plainly wrong. Stobart v. State DOTD, supra; Virgil v. American Guarantee, supra.[3]
In sum, the District Court could reasonably find that despite her statements to the contrary, Ms. Harrison was adequately apprised of her legal rights and emotionally capable of filing a suit more than one year before she ultimately filed the instant petition. For these reasons we find no merit in the second assignment of error.

Conclusion
The judgment of the District Court sustaining the exceptions of prescription and dismissing the action with prejudice is affirmed. Costs are assessed to the plaintiff, Debra G. Harrison.
AFFIRMED.
NOTES
[1] Ms. Harrison quotes the following from the preamble of the Student Handbook:

We sincerely welcome you to Trinity Heights Christian Academy. We want you to share the feeling of pride that we feel in our school.
This handbook is prepared for you to make things easier and help you feel at home. As you make a new beginning in school, let us challenge you to produce your best in both academic and extracurricular activities. Take full advantage of all that Trinity Heights has to offer and you will have a rewarding year.
Trinity Heights Christian Academy has been designed to give personal attention to the individual student, to teach religion as the basis for moral and spiritual development and to teach the academic needs for today's highly technical society. Such a program, in order to operate smoothly, calls for everyone concerned to enter into the spirit of the institution.
This handbook explains the aspects of the school's program and the manner in which everyone may cooperate to make Trinity Heights a successful institution.
This booklet will answer most of the questions you may have about the school. Feel free to ask or call about matters that do not appear to be explained.
Ms. Harrison also quotes the handbook's discussion of the school emblem, the "Trinity Shield," which emphasizes the school's Christian environment and devotion to steadfast service to the Lord Jesus Christ and devotion to the United States of America; a portion which obligates the administration to abide by a "discipline policy"; and its support of the Fellowship of Christian Athletes, which upholds Christian teachings and principles in athletics and on the school campus.
[2] In Fussell, the controversy was whether a business college, to whom the plaintiff had paid tuition, could exclude her from classes because of her disruptive conduct. In Babcock, the controversy was whether a seminary, to which the plaintiff had paid tuition, could suspend a student because he got divorced. In both instances, the plaintiff's claim (for educational services) and the defendant's action (discharging the student on grounds of school procedure) were integral parts of the contract. The Illinois cases of Aronson and Wilson, as well as the Texas case of Babb, also involved college students who were excluded from classes for failure to maintain their grades or to meet other school requirements set forth in the respective college catalogues. In Smith, the controversy was whether the plaintiff's Masters Advisory Committee breached its contractual duty to give him adequate advice for the pursuit of his M.S. degree (the Ohio Court of Claims found the student-college relationship was a contract but rejected the claim).
[3] We note that the legislature recently enacted a statute which extends the prescriptive period for actions based on the abuse of a minor. La.R.S. 9:2800.9, added by La.Acts 1993, No. 694. This statute would arguably apply to a claimant like Ms. Harrison, although the instant record does not meet the procedural guidelines required by § 2800.9B(2). Moreover, a statute enacted after the expiration of the plaintiff's cause of action by prescription cannot revive the already-prescribed action. See Hall v. Hall, 516 So.2d 119 (La. 1987); Small v. Avoyelles Parish Police Jury, 589 So.2d 1132 (La.App. 3d Cir.1991), writ denied 593 So.2d 374 (1992).