679 So.2d 575 (1996)
Lori M. SENN, et al., Plaintiff-Appellant,
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE, Defendant-Appellee.
No. 28,599-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
Writ Denied October 25, 1996.
*577 Nelson, Hammons & Self, by John L. Hammons, Shreveport, for Appellant.
Walker, Tooke, Lyons & Jones, by Laurie W. Lyons, Special Asst. Atty., Robin G. Perrero, Shreveport, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, Judge.
A former university student and her husband brought this suit against the school, alleging the school was liable for a professor's sexual exploitation and abuse of her while she was a student. The trial court found that although the professor's actions amounted to sexual abuse and misconduct, the school was not liable, either independently or vicariously, for that conduct. The plaintiffs appeal. The school answers the appeal, asserting various trial court errors, including the finding that the student's claim had not prescribed.
We render judgment for the school, finding that plaintiffs/appellants' cause of action has prescribed.

FACTS
Lori M. Senn enrolled at Louisiana State University in Shreveport (LSU-S) as a psychology major in the fall semester of 1978. While Mrs. Senn was a student at LSU-S, she enrolled in psychology classes with Dr. Joseph Carlisle in the spring semester of 1979 and the spring and summer semesters of 1982. Mrs. Senn treated Dr. Carlisle as her academic advisor. Dr. Carlisle apparently also counseled students, and Mrs. Senn testified that she sought him out as early as the spring of 1979 for personal counseling regarding other sexual relations which had caused her emotional problems. Mrs. Senn also babysat for Dr. Carlisle's children.
Following Mrs. Senn's final examination in Dr. Carlisle's spring, 1982 class, the two went for a drive out to a building in the country where they had their initial sexual contact, which ended when she told him they needed to go back to school. Approximately two weeks later, Mrs. Senn met Dr. Carlisle for lunch, and he offered her a job as his transcriptionist for the summer semester. She met him several days later to complete the paper work regarding the job, and they went back out to the country building. While there, she performed oral sex on him. These incidents of sexual relations continued through the summer of 1982. The money allocated by LSU-S for her transcriptionist job was depleted after three weeks, but she continued to work for him without pay. Throughout this time period, Mrs. Senn was 21 years old.
During the summer of 1982, Mrs. Senn became ill, experiencing gastrointestinal problems. She went to see Dr. James Woodfin Wilson, a specialist in internal medicine, in July of 1982. Dr. Wilson could not identify any physical reason for Mrs. Senn's symptoms. When he asked if she had any stress-causing situations in her life, she told him of her affair with Dr. Carlisle. In August of 1982, Mrs. Senn informed Dr. Carlisle that she could not continue the sexual part of their relationship. She did not enroll in *578 school that fall semester, and she married her husband, Robbie Senn, in November.
In the spring of 1991, Mrs. Senn separated from her husband and began seeing Dr. Jean Hollenshead, a clinical psychologist and herself a professor of psychology at LSU-S, for counseling regarding her marital problems. These sessions were tape recorded, and some of them were subsequently transcribed and admitted into evidence at trial. In Mrs. Senn's May 16, 1991, session with Dr. Hollenshead, she stated that her sister had asked about the relationship with a professor at LSU-S. In that same counseling session, Mrs. Senn responded affirmatively when Dr. Hollenshead asked if her father knew about the relationship, although in later sessions Mrs. Senn states that she remembers wanting to tell her father but not actually telling him. Dr. Hollenshead explained to Mrs. Senn in that session that this behavior by the professor, whose name was not then given to Dr. Hollenshead, was extremely unethical and that the professor was completely responsible for the harmful consequences of that behavior.
In their counseling session of September 4, 1991, Mrs. Senn discussed her relationship with Dr. Carlisle with Dr. Hollenshead again. Mrs. Senn referred to Dr. Carlisle by his first name. Dr. Hollenshead again emphasized to Mrs. Senn that Dr. Carlisle's behavior violated certain acceptable standards and that Mrs. Senn was not to blame. Dr. Hollenshead advised her:
This is occurring with many teachers, faculty members and students and we are just beginning to study the life long impact of that kind of relationship. We are beginning to recognize that by writing it into ethical standards and in some states the laws because it is so damaging and the person who has chosen to comply with that, the student, the patient, the client is in absolutely no way responsible.
By September 25, 1991, at the latest, the transcripts of these sessions reveal that Dr. Hollenshead knew that the professor involved in this affair with Mrs. Senn was Dr. Carlisle.
Dr. Hollenshead also kept written notes of her patient sessions. In one such note, Dr. Hollenshead indicates Mrs. Senn reported she had told some other person, identified in the note as B.B., some years ago about the situation with Dr. Carlisle, and that B.B. had told Mrs. Senn, "you ought to sue the bastard."
Mrs. Senn alleges the incidents with Dr. Carlisle caused her physical and psychological illness, including a problem having sexual relations with her husband and a lack of general responsiveness to her husband and children resulting in an extreme detachment from them. Mrs. Senn and her husband did not bring this action until October 14, 1992. Their petition sought damages under both tort and contract theory, naming the school as the sole defendant.

PROCEDURAL HISTORY
LSU-S filed a peremptory exception of prescription on November 5, 1992. The plaintiffs countered urging the doctrine of contra non valentem. In support of Mrs. Senn's assertion of this doctrine, she presented the deposition of Dr. Hollenshead. However, in its pre-trial ruling on the exception, the trial court did not consider the actual transcripts of Dr. Hollenshead's counseling sessions with Mrs. Senn. Applying the doctrine of contra non valentem and recognizing that the petition sounded in both tort and contract, potentially making applicable the ten year prescriptive period, the trial court denied the exception of prescription.
Following a trial of the case, the trial court ruled in favor of LSU-S, dismissing all claims of the plaintiffs. The trial court found that Dr. Carlisle's conduct amounted to sexual abuse and misconduct which was not part of a consensual relationship with Mrs. Senn. However, the trial court found that the actions of Dr. Carlisle were not in the course and scope of his employment, thus the defendant was not vicariously liable for Dr. Carlisle's tortious conduct. The court further found that LSU-S was not independently negligent in its hiring and supervision of Dr. Carlisle, and that the university was not liable to Mrs. Senn for breach of contract as no contract existed between the parties.

*579 LAW

In its answer to this appeal, LSU-S assigns as error the trial court's denial of its peremptory exception of prescription. No assignment of error was briefed or argued by appellants regarding the trial court's ruling that no contract existed between the parties. Therefore we address this appeal from the perspective of the appellants' tort claim with its corresponding one year prescriptive period. Stonecipher v. Mitchell, 26,575 (La.App. 2d Cir. 5/10/95), 655 So.2d 1381; URCA Rule 2-12.4.
When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed. Wimberly v. Gatch, 93-2361 (La. 4/11/94), 635 So.2d 206. The Senns' suit is not timely unless the doctrine of contra non valentem or a continuing tort theory operated to keep prescription from running.
The suspensive theory of contra non valentem agere nulla currit praescripto, meaning "prescription does not run against a party unable to act," is a judicially created doctrine which is an exception to the general rules of prescription. Generally the doctrine of contra non valentem suspends prescription where the circumstances of the case fall into one of four categories:
(i)where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions;
(ii)where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(iii)where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
(iv)where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979); Wimberly v. Gatch, supra; and Harrison v. Gore, 27,254 (La.App. 2d Cir. 8/23/95), 660 So.2d 563, writ denied, 95-2347 (La. 12/8/95), 664 So.2d 426.
Only the last two categories are pertinent to this case. The third category applies to cases where defendant engages in conduct which prevents a plaintiff from availing herself of her judicial remedies. The fourth category, commonly called the discovery rule, provides that prescription begins when the injured party discovers or should have discovered the facts upon which her cause of action is based. Hence prescription does not run against one who is ignorant of the facts upon which her cause of action is based, as long as such ignorance is not willful, negligent, or unreasonable. The court in Wimberly noted that the third and fourth categories of contra non valentem combine in a sexual abuse setting because the defendant's tortious act causes the child victim's delayed or silenced ability to report the abuse so that his parents can discover the cause of action. Wimberly, supra, p. 216.

DISCUSSION
LSU-S asserts in its answer to this appeal that the trial court erred in overruling its exception of prescription, based upon the one year period applicable to intentional torts. La.C.C. art. 3492. Defendant's exception of prescription was denied by the trial court after reviewing depositions and other evidentiary filings.
We note that the opinion denying the exception of prescription was dated October 8, 1993. The arguments of the parties regarding the late disclosure of the tapes of Mrs. Senn's sessions with Dr. Hollenshead were not heard and ruled upon until November 2. Thus, in making its ruling on prescription, the trial court did not have the information on the tapes, which was later admitted at the trial on the merits. Our review of the trial court's denial of prescription is based upon the entirety of the record. See Babineaux v. Pernie-Bailey Drilling Co., 262 So.2d 328 (La.1972) and La.C.C.P. art. 2163.
According to Mrs. Senn's testimony, nothing significant occurred between her and Dr. Carlisle from 1984 to 1989, as she saw him rarely and only at public functions. She left school in 1984 because she was pregnant. She returned to school from 1989 until 1992, *580 but there were no sexual advances made toward her by Dr. Carlisle. In 1990 or 1991, she approached him by going to his home. However, he would not repeat the actions of the summer of 1982, although she admittedly wanted him to. Thus there is no evidence of sexual conduct between the parties after the summer of 1982. Likewise, the lack of a continuous pattern of actions by Dr. Carlisle toward Mrs. Senn over this extended period of time removes the case from consideration of the notion of continuing tort. See Bustamento v. Tucker, 607 So.2d 532 (La.1992).
We have reviewed the contra non valentem argument presented by appellants through the deposition testimony of Dr. Hollenshead. According to Dr. Hollenshead, when Mrs. Senn first revealed the existence of the relationship with Dr. Carlisle, Mrs. Senn had no awareness of the meaning of that relationship as compared to other relationships. Dr. Hollenshead further testified in her deposition that even after Mrs. Senn had confided Dr. Carlisle's identity to her, Mrs. Senn was not fully cognizant of the relationship's significance and was incapable of placing fault or blame appropriately. Dr. Hollenshead stated that despite the fact that she told Mrs. Senn that her problems experienced out of this relationship were not her fault, Mrs. Senn did not believe it. Dr. Hollenshead stated that Mrs. Senn later began to demonstrate anger, placing the responsibility "back where it ought to be," presumably meaning on Dr. Carlisle. This manifestation of anger, according to Dr. Hollenshead, indicates that the angry person feels violated, thus Mrs. Senn's ability to be angry with Dr. Carlisle signified a movement toward viewing him as having violated her trust.
Appellants' argument, based on the expert opinion of the psychologist, is presented as primarily arising under the third arm of the doctrine of contra non valentem in that Dr. Carlisle's practice of exploitation created a psychological inability in Mrs. Senn to understand the harm and to avail herself of action against Dr. Carlisle and LSU-S. This defense to the running of prescription is analogous to the Child Sexual Abuse Accommodation Syndrome (CSAAS) recognized by the Supreme Court in Wimberly v. Gatch, supra, as triggering the third category of contra non valentem because of a child victim's reaction to sexual abuse, which many times is silence or delayed reporting. In such a case where the victim of sexual abuse is a minor and the parents are therefore the proper party plaintiffs, the action may be brought on behalf of the minor within one year of his parents' knowledge of the tortious acts.
A second line of cases represented by this court's opinion in Harrison v. Gore, supra, has, in the great majority of instances, rejected the claims for the application of contra non valentem when the plaintiffs sued as adults for their sexual victimization as minors. See Bock v. Harmon, 526 So.2d 292 (La.App. 3d Cir.1988), writ denied, 531 So.2d 275 (La.1988); Doe v. Ainsworth, 540 So.2d 425 (La.App. 1st Cir.1989), writ denied, 542 So.2d 511 (La.1989); Crosby v. Keys, 590 So.2d 601 (La.App. 2d Cir.1991), writ denied, 593 So.2d 373; Fontaine v. Roman Catholic Church of Archdiocese of New Orleans, 625 So.2d 548 (La.App. 4th Cir.1993), writ denied, 630 So.2d 787 (La. 1/28/94); and Tichenor v. Roman Catholic Church of Archdiocese of N.O., 665 So.2d 1307 (La.App. 4th Cir.1995), writ denied, 669 So.2d 424 (La.1996). But see, Held v. State Farm Ins. Co., 610 So.2d 1017 (La.App. 1st Cir.1992), writ denied, 613 So.2d 975 (La.1993). In these cases, most courts rejected the plaintiffs' claims that after reaching the age of majority they remained psychologically unable to assess the responsibility for the relationships and to sue.
This case represents a third category of cases[1] in which the plaintiff is an adult at the time that the sexual acts occurred. The trial court viewed Dr. Carlisle's tortious sexual abuse as abrogating altogether the consent of the plaintiff to the relationship. For the preliminary issue of prescription, however, we are not prepared to go that far in our assessment of her ability to understand Dr. Carlisle's responsibility for the damages she suffered. However manipulative Dr. Carlisle's *581 power may have been, from our view of the record, the plaintiff as an adult retained some ability to assess the detrimental consequences of the relationship from its inception in 1982. Though delictual consequences may flow from this category of exploitive sexual conduct between adults, the running of prescription will not be as easily tolled by the extension of the doctrine of contra non valentem which has been employed in the other two categories involving the criminal abuse of children.
At the trial of the ruling on prescription, the trial court reviewed Dr. Hollenshead's opinion testimony presented to bolster Mrs. Senn's position that she delayed in bringing this suit for ten years because of Dr. Carlisle's hold over her. While such expert testimony may be of assistance in explaining in general terms the behavioral characteristics of adult sexual abuse victims, we place greater weight on the facts pertaining to the life history of Mrs. Senn before and after the 1982 abuse and on her statements transcribed directly from her counseling sessions with Dr. Hollenshead which the trial court only later received into evidence at trial and thus never addressed for purposes of the issue of prescription.
La.C.E. art. 702 provides that if the scientific knowledge of an expert will assist the trier of fact to understand the evidence or to determine a fact in issue, the experts may testify thereto in the form of an opinion. Discussing the expert testimony of a psychotherapist and such expert's use of the CSAAS analysis in a child abuse case, the supreme court in State v. Foret, 628 So.2d 1116, 1125 (La.1993), observed:
This type of testimony also suffers from a number of difficulties inherent with all types of psychodynamic psychology. It is essentially "irrefutable," as the only way to test it is by proposing theoretical explanations for behavior and then testing the theories upon patients. See Morse, "Failed Explanations and Criminal Responsibility: Experts and the Unconscious," 68 Va.L.R. 971, 995 (1982). Regardless of opinions on the accuracy of psychodynamic theories such as the one at bar, we must agree with Professor Morse's conclusion that psychodynamic theories on the explanation of human behavior is, at best, a science that is difficult to impossible to test for accuracy. This untestability comes from its very nature as an opinion as to the causes of human behavior, and the fact that the methods for testing the results of psychoanalysis are rife with the potential for inaccuracy.
We believe this analysis is significant for determining the weight to be placed upon the opinion testimony of Dr. Hollenshead in this case.
The record reveals many objective factors which demonstrate to us that the damaging consequences of the parties' 1982 sexual relations were known to Mrs. Senn and that she suffered under no psychological incapacity sufficient to have prevented her for almost ten years from bringing this suit. Mrs. Senn's stress-related symptoms of nausea, vomiting and diarrhea were recognized by her and her physician, Dr. Wilson, in 1982 as resulting from Dr. Carlisle's actions toward her. This led her to choose to end thereafter all sexual relations with Dr. Carlisle.
After Mrs. Senn's marriage in 1982, she left school and functioned normally in society raising her children and performing adequately in various jobs. For the five year period between 1984 and 1989 while she was away from LSU-S, Dr. Carlisle was seldom even seen by Mrs. Senn. Though the guilt and scars of the past relationship were never discarded, she functioned as a normal adult without seeking psychological therapy. She was able to discuss the actions of Dr. Carlisle with at least three people other than Dr. Hollenshead. Dr. Hollenshead's therapy sessions began only after trouble later developed in Mrs. Senn's marriage in 1991. In May, 1992, Mrs. Senn obtained her degree in psychology from LSU-S.
The leading case employing the third arm of the doctrine of contra non valentem was Corsey v. State, Through Dept. of Corrections, supra, where the plaintiff, a prisoner in the custody of the State, suffered brain damage which prevented his timely filing of suit within one year of the wrongful conduct. Reviewing appellant's capabilities and life experiences in this case, we do not find that the *582 psychological trauma resulting from Dr. Carlisle's 1982 actions created an incapacity comparable to the Corsey plaintiff's condition which would cause prescription to be suspended. This finding is similar to the rulings of other appellate courts of this state which have rejected psychological impairment as a bar to the running of prescription when resting primarily upon the more subjective opinions of experts developed from psychotherapy. See cases cited above and also Laughlin v. Breaux, 515 So.2d 480 (La.App. 1st Cir. 1987). The policy issues underlying the prescriptive limitations on actions demand no less.
Moreover, even assuming for the sake of argument that, as Dr. Hollenshead's testimony indicates, Dr. Carlisle's actions had created a continuing condition in Mrs. Senn which kept her throughout this lengthy period from being able to place responsibility for the tortious conduct on Dr. Carlisle, our review of the transcripts of Mrs. Senn's counseling sessions with Dr. Hollenshead nevertheless indicates that this condition ended over one year prior to the filing of this suit.[2] In the transcribed session dated September 4, 1991, Mrs. Senn told Dr. Hollenshead that she had "been thinking about ... wanting to go up to [Dr. Carlisle] and just knock his block off. I'm really angry towards him now when I see him." In the September 11, 1991, session, Mrs. Senn stated, "I was taken advantage of [in the relationship with Dr. Carlisle].... I'm disappointed that he took it upon himself to take advantage of me ... Whenever I'm in his presence I'm angry at him now." During the September 25, 1991, session, Mrs. Senn related an incident from the previous Monday when she happened to encounter Dr. Carlisle while attending other classes at LSU-S. She stated to Dr. Hollenshead four times how angry she was with him. He invited her into his office and she went although she strongly felt she did not want to be there. She told Dr. Hollenshead, "The next time ... if I have something to do, I will be able to leave.... If I want to stay, I'll stay. If I don't want to stay, I'm not going to stay." Later she repeated how angry she was with him and expressed the desire to tell him what she thought of him. The evidence revealed no other similar encounters thereafter between the parties.
Accepting the full force of Dr. Hollenshead's opinion regarding the yoke of Dr. Carlisle's control over Mrs. Senn, we find that Mrs. Senn was exhibiting the requisite anger required by Dr. Hollenshead's analysis in each of the above sessions. Assuming that Dr. Carlisle had had for the entire ten year period some type of control over her life, Mrs. Senn was not in denial regarding the inappropriateness of Dr. Carlisle's behavior after September 25, 1991, at the very latest. Since suit was not filed until October 14, 1992, we find that appellants' action prescribed.

DECREE
For the foregoing reasons, the judgment in favor of defendant, LSU-S, is AFFIRMED, but on different grounds. Judgment is RENDERED granting defendant's exception of prescription without reaching the merits of plaintiffs' claims on the alleged tort and the issue of vicarious liability. All costs are assessed to plaintiffs-appellants.
NOTES
[1] Cf. also Strata v. Patin, 545 So.2d 1180 (La. App. 4th Cir.1989), writ denied, 550 So.2d 618 (La.1989) and Roppolo v. Moore, 93-2361 (La. App. 4th Cir. 7/27/94), 644 So.2d 206.
[2] In Dr. Hollenshead's deposition which the trial court used in making his ruling on prescription, she stated from memory that Mrs. Senn had first mentioned Dr. Carlisle's actions to her in counseling sessions in September, 1991, without discussing the incident in detail or identifying the LSU-S faculty member. The actual transcripts show that that initial reference to the incident actually occurred on May 16, 1991.