DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-723

RICHARD HARGETT

VERSUS

ESTATE OF DANIEL N. HARGETT, SR., YVETTE HARGETT, DANIEL N.
HARGETT, JR., LLOYD HARGETT, HEIDI HARGETT, AND ELIZABETH
HARGETT

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20025288
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

**********

J. DAVID PAINTER

**********

Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter,
Judges.

AFFIRMED.

Joseph C. Peiffer
James R. Swanson,
E.C. McCardle
201 St. Charles Ave., 46th Fl.
New Orleans, LA 70170-4600
Counsel for Plaintiff-Appellant:
        Richard Hargett

Joseph F. Gaar, Jr.
Jason M. Welborn
P.O. Box  2053
Lafayette, LA 70502
Counsel for Plaintiff-Appellant:
        Richard Hargett
Eric J. Simonson
Richard A. Aguilar
Edward L. Fenasci

**643 Magazine St.**
**New Orleans, LA 70130-3447**
**Counsel for Defendants-Appellees:**
      **Yvette Hargett, Elizabeth Hargett Patridge, Heidi Hargett Perry, Lloyd**
      **Hargett and Daniel Hargett, Jr.**

**Jack M. Alltmont**
**201 St. Charles Ave., 35th Fl.**
**New Orleans, LA 70170**
**Counsel for Defendant-Appellee:**
      **Lloyd Hargett**

PAINTER, Judge.

Plaintiff, Richard Hargett, appeals the judgment of the trial court dismissing his claims against the estate of his brother and his brother's heirs pursuant to exceptions of no cause of action and prescription. For the following reasons, we affirm.

## FACTS

Daniel Hargett, Sr. and Richard Hargett were brothers. Daniel was majority shareholder in Hargett Mooring & Marine, Inc. (HMM) and owned a 67% share in the company. Richard was a minority shareholder with a 33% share. Daniel was sole owner of CSI Hydrostatic Testers (CSI), which was a major customer of HMM. In 1997, Daniel began negotiations for the sale of both businesses. Richard was not involved in the negotiations. Daniel and Richard executed a letter of intent to sell the businesses. In July 1997, Daniel and Richard executed an Exchange Agreement whereby Richard exchanged his shares in HMM for shares in CSI. In November 1997, Transcoastal Marine Services purchased CSI for $44,000,000.00 in cash and $11,000,000.00 in Transcoastal stock options. Richard received $2,800,000.00. Daniel Hargett received $36,000,000.00 and 433,000 shares of Transcoastal stock. Daniel died on May 29, 1998. In August 2002, Richard received documents produced in a lawsuit filed against Daniel Hargett which allegedly led him to believe that the value assigned to the HMM stock in the Exchange Agreement was too low and that the value assigned to the CSI stock was too high.

## PROCEDURAL HISTORY

On October 11, 2002, Richard filed this suit for damages alleging, in the original and several amending petitions, breach of fiduciary duty, breach of contract

1

to properly value HMM's stock, violation of federal and state securities laws, unjust enrichment, and detrimental reliance and asking to have the Exchange Agreement rescinded because his consent was obtained by fraud. In his petition he alleges that he and his brother were business partners but that Daniel "was much more involved and exercised much more control over corporate structure, global corporate strategy and financial and financing affairs," and that he, Richard, was more involved in the operations of the business. He further alleges that the two corporations, HMM and CSI, were dependent on each other and could not function separately. Richard asserts that Daniel exercised substantial control over HMM and often used this control to coerce Richard into acquiescing in his decisions. Richard asserts that he did not have access to the financial records and projections of CSI and that, during negotiations for the sale of the businesses, Daniel had superior knowledge about the structure, value, and timing of the transaction. He alleges that Daniel intentionally supplied him with false, misleading, and incomplete information about the value of HMM's assets and valued CSI too high and HMM too low in order to benefit himself in the sale of the business.

All of Richard's claims were dismissed pursuant to exceptions of no cause of action or prescription. He appeals the dismissal pursuant to exceptions of no cause of action of his claims for detrimental reliance and rescission based on contractual fraud and duress, the trial courts determination that La.R.S. 12:1502 preempted all of Richard's breach of fiduciary claims, and the dismissal of his claim for breach of contract.

2

**DISCUSSION**

*Breach of Contract*

We first consider Richard's argument that the trial court erred in dismissing his claims for breach of contract pursuant to an exception of no cause of action.[1] Richard asserts that Daniel breached an oral contract to fairly value both companies, that Richard accepted the offer, and that Daniel breached his oral contract. The trial court found that his petition did not state a cause of action for breach of contract.

The criteria for deciding an exception of no cause of action are as follows:

> A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238 (La.1993). The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. *Id.* at 1235. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. *Jackson v. State ex rel. Dept. of Corrections*, 00-2882, p. 3 (La.5/15/01), 785 So.2d 803, 806; *Everything on Wheels Subaru*, 616 So.2d at 1235. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Montalvo v. Sondes*, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.
>
> Louisiana has chosen a system of fact pleading. La. C.C.P. art. 854 cmt. (a); *Montalvo* at p. 6, 637 So.2d at 131. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. *Kizer v. Lilly*, 471 So.2d 716, 719 (La.1985). However, the mere conclusions of the plaintiff unsupported by

---

[1] We note that Richard did not support his arguments by referring to those places in the record containing the erroneous rulings, either in the form of judgment or in the transcript of the various proceedings. His only record references are his own pleadings. Uniform Rules–Courts of Appeal Rule 2-12.4 requires that:

> The argument on a specification of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.

3

facts does not set forth a cause of action. *Montalvo* at p. 6, 637 So.2d at 131.

The burden of demonstrating that the petition states no cause of action is upon the mover. *City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a de novo review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. *Fink v. Bryant*, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; *City of New Orleans* at p. 28, 640 So.2d at 253. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief. *City of New Orleans* at p. 29, 640 So.2d at 253.

*Ramey v. DeCaire*, 03-1299 (La.3/19/04), 869 So.2d 114, 118-19.

*Wright v. Louisiana Power & Light*, 06-1181, pp. 14-15 (La. 3/9/07),951 So.2d 1058, 1069.

Therefore, we must examine the petition to determine whether it states a valid cause of action for breach of an oral contract.

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art.1906. Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. *See Leger*[*v. Tyson Foods, Inc.*, 95-1055 (La.App. 3 Cir 1/31/96], 670 So.2d 397. "Both parties must be bound in order for there to be a contract." *Id.* at 401.

*McPherson v. Cingular Wireless, LLC*, 07-462, p.3 (La.App. 3 Cir. 10/3/07), 967 So.2d 573.

Richard, in his appellate brief, asserts that his petition sufficiently states a cause of action for breach of contract.

The trial court in explained his ruling as follows:

. . .[T]he problem I have with your allegations of oral contract is a lack of specificity. I think that a contract, because it is oral rather than written, does not lessen the obligation to be specific as to the price, the

4

thing, and the consent, and a meeting of the minds; and that's what I'm not seeing here.

. . . . I don't think there's an oral contract. I don't think an oral contract has been alleged with sufficient specificity to maintain an action in oral contract. That's my ruling.

. . . .

And it's a specificity question. Could they have had an oral contract on this issue? I think they could have. Did they? I don't think you've alleged sufficiently what the requirements, the prerequisites that it would take for there to be one.

After reviewing Richard's petition, we agree with the trial court that it does not state a cause of action for breach of contract. Accordingly, we find no error in the trial court's dismissal of the action for breach of contract pursuant to Defendants' exception of no cause of action.

*Rescission*

Richard asserts that the trial court erred in dismissing his action for rescission of the exchange agreement on the grounds of fraud and duress.

1) <u>Fraud</u>

The trial court found that the claim for rescission based on fraud was prescribed and rendered judgment dismissing the claim.

Contracts may be rescinded where consent has been fraudulently obtained. *See* La.Civ.Code art 3079. A five year prescriptive period applies to such contracts, which are relatively null. "Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud." La.Civ.Code art. 2032.

5

In his affidavit attached to his memorandum in opposition to the exception, Richard made the following statements:

> 9. Daniel told me that my portion of Hargett Mooring was worth approximately, $2,800,000. Daniel also told me that a minority shareholder " I was lucky to get that much" for my portion of Hargett Mooring. Further, he threatened that if I did not accept this amount he might not sell the company and he might fire me from my job at Hargett Mooring.
>
> . . . .
>
> 11. On November 4, 1997, I was presented with a purchase agreement that sold the combined companies to Transcoastal. This was the first time that I reviewed this purchase agreement. Daniel instructed me to sign this agreement and again told me that if I did not sign it the companies would not be sold. After signing the agreement, Daniel presented me with a check for $2,800,000, which he said represented the value of my portion of the combined companies.

Further, Richard's first amending and supplemental petition contained the following allegation:

> All of the discussions and transactions outlined herein were conducted under explicit and implicit threats by Dan[iel] that as a result of his position as majority owner of the family business he could do whatever he wanted and that if [Richard] did not go along with the proposed transactions [Richard] would end up in a worse position.

The trial court, in deciding that the claim for rescission based on fraud was prescribed, stated that:

> The issue that I'm trying to decide now is - - and I've gone full circle on it, I guess, is at what point does sufficient notice under the doctrine of contra non-valentum take place, where he knew or should have known. I'm not going to go back to where he - - I don't know when the first threat was or the first pressure took place; so I'm using the date that he actually put pen to paper and relented and said, okay, as a result of your threats and pressure and everything, I'm going to sign the thing. And at that point he might have also said, but I'm going to look into it.

* * *

6

This is the word I'm going to have on it: I think that businessmen in this situation, even though one was dominant over the other and one was trusting of the other, I think that, given his own affidavit that he felt threatened, that he felt pressured, that the sale - - that this involved the sale of the business; he knew that - - that this was going to determine his livelihood for the remainder of his life, I think that they were signing legal documents which were going to end up finally in the sale of the business, I think that even the least sophisticated businessman should have gone to someone or made some efforts to find out whether his brother was telling him was correct or not . . . .

Therefore, the trial court found that prescription of the claim for rescission based on fraud began to run on the date Richard signed the exchange agreement, which, according to Richard's affidavit, was in July 1997. Accordingly, the trial court found that the claim was prescribed and dismissed it. We agree.

In Louisiana law, under the doctrine of *contra non valentem agere nulla currit praescriptio*, prescription does not run against a party unable to act. *Wimberly v. Gatch*, 93-2361 (La.4/11/94), 635 So.2d 206. *Contra non valentem* halts the running of prescription when the circumstances of the case fall into one of the following four categories: "(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant." *Id*. The principles of *contra non valentem* do not halt the running of prescription if the plaintiff's ignorance is the result of his own willfulness or neglect. *Id*.; *Picard v. Vermilion Parish School Bd.*, 00-1222 (La.App. 3 Cir. 4/4/01), 783 So.2d 590, *writ denied*, 01-1346 (La.6/22/01), 794 So.2d 794; *Matthews v. Sun Exploration & Prod. Co.*, 521 So.2d 1192 (La.App. 2 Cir.1988).

Although *contra non valentem* is a legal principle, and a determination as to whether or not the plaintiff was indeed prevented from filing its claim under one of the four circumstances is an issue of fact. Therefore, the trial court's finding of fact on this issue is subject to the manifest error, clearly wrong standard of review. *Picard*, 783 So.d 590.

7

*Amoco Production Co. v. Texaco, Inc.*, 02-240, pp. 8-9 (La.App. 3 Cir. 1/29/03), 838 So.2d 821, 829-30, *writs denied*, 03-1102, 03-1104 (La. 6/6/03), 845 So.2d 1096.

In light of the admissions made in his pleadings and affidavit, Richard had a reasonable basis to pursue a claim when he signed the Exchange Agreement.

2) Duress

Richard also appeals the trial court's dismissal of his claim for rescission based on duress. The court found that Richard's petition did not state a cause of action for rescission based on duress.

Defendants argue that the exchange was with CSI, and, therefore, Richard failed to state a cause of action against him for rescission based on duress because neither Daniel nor his estate can return the stock. Richard argues that he does not seek to rescind the sale, but rather he wants Defendants to give him the excess sale proceeds. We agree with the trial court's determination that the petition does not state a cause of action for rescission. Richard did not state a cause of action for rescission of the Exchange Agreement against Daniel because Daniel was not the party with whom the exchange took place.

*Fiduciary Duty*

Richard asserts that the trial court erred in finding that all his claims for breach of fiduciary duty are preempted under La.R.S. 12:1502, arguing that the statute is not applicable to all his claims that Daniel breached his fiduciary duty as a joint venturer and as majority shareholder of CSI.[2] However, Defendants correctly assert that these claims are not before the court. Richard moved to file a third amended petition

---

[2] We note that Richard does not appeal the dismissal of his claims against Richard for breach of fiduciary duty as a brother, a partner, and as majority shareholder of HMM.

containing these claims. However, the trial court granted "leave for plaintiff to file his Third Supplemental and Amending Petition for the limited and sole purpose of clarifying his claim for detrimental reliance." As a result, any additional claims asserted in the petition are not before this court. Therefore, we will not consider this assignment of error.

*Detrimental Reliance*

Richard asserts that the trial court erred in finding that his claim for detrimental reliance was prescribed. He argues that the claim is subject to a ten year prescriptive period. We disagree.

> The nature of the duty breached determines whether the action is in tort or in contract. *Roger v. Dufrene*, 613 So.2d 947, 948 (La.1993). The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons. *Trinity Universal Insurance Company v. Horton*, 33,157, p. 2 (La.App. 2nd Cir.4/5/00), 756 So.2d 637, 638, citing *Harrison v. Gore*, 27,254, p. 8 (La.App. 2nd Cir.8/23/95), 660 So.2d 563, 568, *writ denied*, 95-2347 (La.12/8/95), 664 So.2d 426. Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are actually grounded in tort. *Id.* The mere fact that the circumstances arose in the context of a contractual relationship does not make the cause of action contractual. The courts are not bound to accept a plaintiff's characterization of the nature of his cause of action if unsupported by factual allegations. *See United Gas Pipe Line Company v. Cargill, Inc.*, 612 So.2d 783, 786 (La.App. 1st Cir.1992).

*Thomas v. State Employees Group Benefits Program*, 05-0392, p. 5 (La.App. 1 Cir. 3/24/06), 934 So.2d 753, 757.

The court in *Roger v. Dufrene*, 613 So.2d 947, 949 (La.1993) applied a distinction between misfeasance and malfeasance to decide whether an action sounded in tort or contract for purposes of prescription:

> In *Elzy v. ABC Insurance Co.*, 472 So.2d 205 (La.App. 4th Cir.), *writ denied*, 475 So.2d 361 (La.1985), a one year prescriptive period

9

was found applicable to a malpractice claim by a client against his former attorney. The court noted the distinction between nonfeasance and misfeasance of contractual obligations. Nonfeasance was exclusively a breach of contract; misfeasance could be a tort. Thus, the issue was whether the attorney's behavior was nonfeasance of his obligations and therefore a breach of contract governed by ten years, or misfeasance governed by the tort prescription of one year.

*See also Harrison v. Gore*, 27,254 (La.App. 2 Cir. 8/23/95), 660 So.2d 563, *writ denied*, 95-2347 (La. 12/8/95), 664 So.2d 426.

We agree with the trial court that the conduct alleged by Richard in his claim for detrimental reliance is delictual in nature and is, therefore, subject to prescription of one year. Therefore, we find no error in the trial court's dismissal of the claim for detrimental reliance.

## CONCLUSION

For these reasons, the judgements of the trial court are affirmed. Costs of this appeal are assessed to the Appellant.

AFFIRMED.